STATE EX REL. SLEEMAN, Respondent, vs. BAXTER, Mayor, Appellant.

*December 10, 1927—April 3, 1928.*

*Municipal corporations: Home-rule amendment: Option laws: What constitute: Commission form of government for cities: Effect upon existing legislation: Power of legislature: When state legislation becomes subordinate to city legislation.*

1. An option law is one which, although a full and complete law in itself, becomes of force and effect in a given municipality only upon the assent of the municipality, expressed sometimes by a vote of the people and sometimes by action of the governing body. p. 440.
2. Ch. 63, Stats., which relates to the commission form of government for cities, is a grant of power to cities, although they may not exercise it, and is not an option law in any sense of the word; yet if it were, the legislature might enact a law authorizing the abolition of the form of government prescribed by the chapter, and make its operation dependent upon the adoption of the law by any city which had adopted the commission form of government. pp. 442, 443.
3. Sec. 63.15, Stats., is a valid and constitutional law, and upon the filing of a petition, duly and sufficiently signed, with the city clerk, it was the duty of the mayor of the city of Su-

438    SUPREME COURT OF WISCONSIN.    [Apr.

State ex rel. Sleeman v. Baxter, 195 Wis. 437.

perior, which had been operating under the commission form of government, to submit to the electors the question whether the council should be increased to include one councilman from each ward.    p. 443.

4. The home-rule amendment (sec. 3, art. XI, Const.) is a grant of power to cities and villages; but it does not expressly limit the powers of the legislature, the limitations in the amendment being upon the exercise of the power conferred.    p. 445.

5. The phrase in the amendment, "cities and villages organized pursuant to state law," recognizes the existence of state legislation, and city charters not only remain, but they may be altered, amended, or repealed at the will of the legislature. pp. 445, 446.

6. While the home-rule amendment should be liberally construed to effect its manifest purpose, at that point liberal construction should end, and the courts should be reluctant to impose by implication a limitation on the powers conferred by sec. 1, art. IV, of the constitution on the legislature unless such implied limitation is necessary to effect the purpose of the amendment.    p. 446.

7. When the city legislates upon a subject, and such legislation is in conflict with state legislation upon that subject, the city legislation prevails over the state legislation unless the state enactment shall with uniformity affect every city or every village.    pp. 447, 448.

8. Under the amendment the legislature may enact laws affecting only classes of cities, but such as do not affect all cities uniformly are to be subordinate to legislation enacted by the cities under their constitutional powers; and the state legislation is still in effect for the government of cities which have not acted under their home-rule powers.    p. 448.

[9. Whether the city of Superior, which was considering a change in its form of government, may accomplish the same purpose under sec. 66.001, Stats., as it can under sec. 63.15, not decided.]    p. 449.

APPEAL from a judgment of the circuit court for Douglas county: G. N. RISJORD, Circuit Judge.    *Affirmed.*

This action was brought by the state of Wisconsin on the relation of *William J. Sleeman,* praying for a peremptory writ of *mandamus* commanding *Fred A. Baxter,* mayor of the city of Superior, to call a special election in said city, as provided by sub. (1) of sec. 63.15, Stats.    From a judgment granting said peremptory writ the defendant appeals.

For the appellant there were briefs by *Grace, Fridley & Crawford* of Superior, and oral argument by *C. R. Fridley.*

*W. B. Kellogg* of Superior, for the respondent.

Briefs as *amici curiæ* were also filed by *Olin & Butler* of Madison; by *William. Ryan* of Madison; by *William F. Hannan* of Milwaukee; by *Martin R. Paulsen,* attorney for the city of Racine; and by the Wisconsin League of Municipalities by *Frank R. Bentley* of Madison, counsel.

OWEN, J. Superior is a city of the second class. For many years it has been operating under the commission form of government. On the 5th day of May, 1927, there was filed in the office of the city clerk a petition duly and sufficiently signed, under the provisions of sec. 63.15, Stats., to arouse the duty of the mayor to submit to the electors the question, "Shall the council of the city of Superior be increased from a mayor and two councilmen to a mayor and one councilman from each ward," in accordance with the provisions of sec. 63.15 of the Statutes, and to call a special election upon such question. The mayor refused to call said special election. This action was then brought to procure a peremptory writ of *mandamus* commanding the mayor to act. The mayor made return to the alternative writ of *mandamus* stating as reason for his refusal that said sec. 63.15 of the Statutes was unconstitutional and void. A demurrer to the return was sustained, and judgment was rendered granting a peremptory writ of *mandamus* compelling the mayor to call such election. From that judgment the defendant, the mayor, brings this appeal.

Ch. 448, Laws of 1909, provided that any city of the second, third, or fourth class might set up a commission form of government in the manner prescribed in said chapter. The chapter then prescribed the form of said commission government and the method of its operation. The governing body consisted of a mayor and two councilmen. Said

ch. 448, Laws of 1909, together with amendments unnecessary to consider, now appears in the Statutes as ch. 63. Sec. 63.15 provides, in substance, that any city operating under a commission form of government may, by vote of the electors to be taken at a special election to be called as therein provided, increase the number of members of the council from a mayor and two councilmen to a mayor and one councilman from each ward. This provision is an amendment to the original law made by ch. 481, Laws of 1917. It is claimed that this provision of the law is invalid, and imposed on the mayor no duty to submit the question to a special election for that reason. Stated in brief, the contention is that the original law was an option law, that sec. 63.15 introduces into the law another option, and that we now have an option within an option, which is invalid, because it constitutes an unlawful delegation of legislative power.

As generally understood, a so-called option law is one which becomes of force and effect in a given municipality only upon the assent of such municipality, sometimes expressed by a vote of the people and sometimes by action of the governing body. It appears upon the statute book as a full and complete law in itself, but its operation in a given municipality is postponed until such municipality adopts the provisions thereof.

Ch. 651, Laws of 1907, creating special municipal courts in each county of the state, is an illustration of such a law. By its terms it established one or more municipal courts in each county of the state and provided that the county board of each county might adopt the provisions of the law as therein provided. This law was considered by this court in *State ex rel. Williams v. Sawyer County,* 140 Wis. 634, 123 N. W. 248, and *State ex rel. Smith v. Outagamie County,* 175 Wis. 253, 185 N. W. 184. In each of those cases the nature and validity of option laws were thoroughly con-

sidered, and our duty in such respect will be fully discharged by mere reference to those cases.

The general charter law for cities enacted in 1889, and amended by sec. 72, ch. 312, Laws of 1893, so as to provide that any city organized under a special charter might "adopt the provisions of any special chapter, section or subdivision of any section of this act, and may exercise any power or franchise hereby conferred upon cities organized under this act, in addition to, or in lieu of, the provisions of its special charter," by an ordinance to be adopted as therein provided, affords another illustration of an option law. This provision was considered by this court in *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869, and *State ex rel. Boycott v. Mayor, etc.,* 107 Wis. 654, 84 N. W. 242. The provision was held efficient to enable cities to adopt the entire legislative scheme upon a given subject as it appeared in the general charter law, but that it was invalid in so far as it attempted to authorize cities operating under special charters to adopt isolated portions of the law. In other words, it was held that it was not a delegation of legislative power to provide for the adoption of a law comprising a complete legislative scheme upon a given subject, while the adoption of segregated portions of the law amounted to the exercise of legislative power.

However, we do not find it necessary to delve deeply into the subject of option laws, for the reason that we do not construe ch. 63 of the Statutes as an option law in any sense. That law was in force and effect in every city of the second, third, or fourth class immediately upon its enactment. It simply conferred an additional power upon cities therein mentioned. There was no provision in the law providing for its adoption by such cities. They enjoyed the power therein conferred immediately upon its passage and publication. The fact that they did not see fit to exercise the power conferred by the law did not indicate that the law was not in

force in every city affected by its provisions, just as much as the amendment of the constitution granting home rule to cities is in force and effect in every city of this state even though few of them have acted under it.

Ch. 63 of the Statutes constitutes a part of the charter of every city of the second, third, or fourth class. It is a grant of power to such cities. They possess the power even though they may not exercise it. When they desire to exercise it they have but to act in the manner provided in the law. No act on the part of any city is necessary to make the law operative in that city. When a city has acted under it and set up a commission form of government, sec. 63.15 simply grants to the city an additional power—the power to change its governing body from a mayor and two councilmen to a mayor and one councilman from each ward. That law is in force in every city within its contemplation, without any act in the nature of an adoption of its provisions on the part of the city. The city may proceed immediately and directly to an exercise of the power conferred in the manner prescribed by the law itself. It is like the power formerly conferred upon municipalities to grant or withhold liquor licenses and to fix the amount to be charged therefor; like the law to change the method for supporting the poor; like the law to change the method for compensating the sheriff, and many other laws conferring power upon municipalities to exercise a choice in their manner of dealing with specific subjects. In all such cases the same law is in force in each municipality at all times. The law does not change with the vote of the people or the action of the governing body. The vote of the people does not vitalize the law, but rather the law gives vitality and character to the vote of the people. So sec. 63.15 does not depend for its vitality or its force upon the election for which it provides, but it prescribes the results which shall follow the election. The election gives the law no force, but the law gives character to the election.

3] JANUARY TERM, 1928. 443

State ex rel. Sleeman v. Baxter, 195 Wis. 437.

While we conclude that the law under consideration is not an option law in any sense of the word, we are constrained to remark that the same conclusion would be inevitable were it so construed under the decision of *State ex rel. Smith v. Outagamie County*, 175 Wis. 253, 185 N. W. 184. That case specifically holds that the legislature may not only make the operation of a law in a given district or municipality dependent upon the adoption of it by that district or municipality, but that the legislature may also authorize the abolition of the law in that district or municipality. If the legislature may pass a law prescribing a commission form of government for certain cities and make the operation of the law in a particular city dependent upon its adoption by that city, it may also pass a law making changes in that form of government and make its operation in any city operating thereunder dependent upon its adoption by that city.

We therefore conclude that sec. 63.15 is in all respects a valid and constitutional law, and that it was the duty of the mayor to call the election provided for by that section, unless the amendment to the constitution granting home rule to cities has deprived the law of its vitality. This suggestion was made in the briefs of counsel, although not urged with seeming assurance. However, the assurance or lack of assurance with which counsel bring forward a proposition does not always indicate the responsibility of the court in the premises. We recognize the question thus raised as a most important one, and one upon which there is more or less confusion on the part of the bar. We have therefore given the question extended consideration, with a view of determining the effect of the home-rule amendment upon existing charters as well as upon the power of the legislature to enact legislation for the government of cities. To that end, we invited briefs *amici curiæ* upon the following questions:

(1) Does the home-rule amendment (art. XI, sec. 3, Const.) withdraw from the legislature all power to enact

laws relating to the "local affairs and government" of cities or villages unless such enactments are of state-wide concern and "shall with uniformity affect every city or every village?" or

(2) Does the legislature have all the power to enact laws relating to cities or villages it had prior to the adoption of the amendment, including power to classify cities, subject only to this: a legislative enactment relating to the "local affairs and government" of cities or villages is superseded in any city or village by a conflicting or inconsistent act of such city or village which in the manner prescribed by sec. 66.001 has determined or shall determine its "local affairs and government," unless the legislative enactment is one "of state-wide concern as shall with uniformity affect every city or every village?"

The response to this invitation was most gratifying. We have been favored with excellent briefs on the part of able counsel, and we have been greatly assisted thereby in arriving definitely and clearly at the conclusions hereinafter announced. We take this opportunity of expressing our appreciation to all who have thus extended us assistance.

Prior to the adoption of the home-rule amendment the material part of sec. 3, art. XI, of the constitution was:

"It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts by such municipal corporations."

The foregoing quoted portion of the section now reads:

"Cities and villages organized pursuant to state law are hereby empowered to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village."

The recognized purpose of this amendment was to confer upon cities and villages a measure of self-government not theretofore possessed. It is a grant of power to cities and villages. There is no express limitation upon the power of the legislature. Such limitations as may be found therein are limitations upon the exercise of the power granted and not limitations upon the power of the legislature. Power is granted to cities and villages "to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village." The phrase "subject only to this constitution," etc., is a phrase of limitation, but it is a limitation upon the power granted to cities and villages. Nowhere do we find words of limitation upon the power of the legislature. On the other hand, it is clear that legislative action in the matter of organization and government of cities and villages is not only contemplated but imperative. The power granted is to "cities and villages organized pursuant to state law." This plainly recognizes the existence of state legislation under which cities and villages may be organized. Such legislation must not only provide the manner in which cities and villages are to be organized, but it must confer powers essential to the existence of a city or a village. A city or a village without powers would be more than an anomaly. It would be a nonentity. It is plain, therefore, that the constitutional provision not only contemplates legislation authorizing the organization of cities and villages, but it authorizes legislation vesting them with powers appropriate and necessary for the purposes of their organization. Not only is such legislation contemplated, but it is imperative, if new cities and villages are to be brought into existence. Neither is there anything in the provision which operates as a restriction upon the form which such legislation shall take. Apparently existing legislation is to remain intact so far as the amendment is con-

cerned.   Neither is there any purpose apparent from the provision that legislation now existing marks the limit of the power of the legislature over the subject, so that the present method of bringing cities and villages into existence must endure throughout the years after times and conditions have changed and existing provisions have become archaic and inappropriate to the changed conditions, or until changed by constitutional amendment.   Legislative power upon this as well as all other subjects still rests with the legislature, and there is no express limitation placed upon the exercise of that power.   It seems plain that the existing charters are not only to remain, but that they may be altered, amended, or repealed at the will of the legislature.

The preceding discussion relates to express limitations upon the power of the legislature.   It is now necessary to inquire whether there are any implied limitations upon that power.   It is thought by some that because legislation on the part of cities and villages determining their local affairs and government is subject only "to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village," that where the legislature legislates upon subjects falling within the category of "local affairs and government" of cities, it must be in a manner that "shall with uniformity affect every city or every village." This would make it impossible for the legislature to classify cities in the existing or any other manner and confine legislation to cities of a given class.   As the constitutional amendment does not impose any such limitations in express terms, courts should be most reluctant to impose by implication such a limitation upon legislative power which the constitution itself by sec. 1, art. IV, sweepingly confides to the legislature, unless necessary to accomplish the purpose of the home-rule amendment.   While it is probably true that the home-rule amendment should be liberally construed to effect its manifest purpose, at that point the rule of liberal con-

struction should end. A rule of liberal construction should not be adopted to work a greater revolution upon the subject than that plainly intended by the people.

Now the plain purpose of the amendment was to grant certain powers to cities. There was no intent or purpose to require cities to exercise the powers thus granted. The amendment confers powers, not duties. It is probable that some cities of the state will exercise the privileges thus conferred in greater or less degree, as the electorate become interested in questions of local government. It is more likely that the greater proportion of the cities of the state will never attempt to exercise the powers or privileges thus conferred, but will content themselves with the exercise of the powers as, and in the manner, authorized by the legislature. The purpose sought to be attained by the home-rule amendment will be accomplished if those cities desiring to exercise the privileges of home rule may do so freed of legislative interference, at the same time permitting other cities which are not disposed to the exercise of home-rule prerogatives to act under classified legislative charters. A careful consideration of the constitutional amendment convinces us that such is not only the purposes of the amendment, but the result thereof when properly construed.

The power conferred upon cities is "to determine their local affairs and government," subject only to such "enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village." This plainly contemplates that there will continue to be in the future as there always have been in the past enactments of the legislature affecting only classes of cities. This is a plain recognition of the continuing right of the legislature to classify cities for the purposes of legislation in accordance with settled practice. But enactments of the legislature which do not affect all cities uniformly are to be subordinate to legislation of cities within their constitutional field. When cities

under their constitutional power enact legislation, that legis-
lation supplants in that city all enactments of the legislature
with which it comes in conflict unless such enactments of the
legislature affect all cities with uniformity. If the state leg-
islation affects only classes of cities, it is subordinate to the
city legislation in the city which has so legislated, but it is
still in force and effect for the government of cities which
have not acted under their home-rule powers.

This establishes a relation between the state and its cities
much akin to many relations existing between the states and
the federal government upon numerous legislative subjects.
Power to enact a bankruptcy law is delegated to Congress by
the constitution of the United States. For many years that
power was not exerted by Congress. Until so exercised,
state legislation upon the subject of bankruptcy was valid.
When, however, Congress legislated upon the subject, Con-
gressional legislation suspended all state legislation and con-
stituted the supreme law of the land upon that subject. *Vol-
untary Assignment of Tarnowski,* 191 Wis. 279, 210 N. W.
836. Similarly the constitutional grant of power to cities in
and of itself creates no limitation upon the power of the
legislature to legislate in the same field. When, however,
the city legislates upon a subject and such legislation is in
conflict with state legislation upon the same subject, the city
legislation upon that subject prevails in that city over the
state legislation, unless the state enactment shall with uni-
formity affect every city or every village. The continuing
power of the legislature to legislate as it always has legislated
in no manner frustrates the exercise of the power of home
rule on the part of any city. It gives to every city desiring
to exercise it the full benefit of its powers without compel-
ling every other city of the state to exercise the same power
whether or not it is so disposed.

We therefore conclude that the home-rule amendment im-
poses no limitations upon the power of the legislature. Leg-

islation existing at the time of its adoption is in effect. The power of the legislature to legislate in the future as it has in the past has not been limited. But where legislation of a city enacted within the scope of its home-rule powers comes in conflict with state legislation, the legislation of the city prevails over the state legislation, unless the state legislation affects uniformly every city of the state.

In our discussion of this question we have assumed that the fundamental change in the government proposed by the city of Superior is within the scope of its home-rule powers. That may be a doubtful question. We have not considered and do not undertake to decide it.

Sec. 66.001, Stats., prescribes a method for the determination of the affairs of local government of cities and villages. This section relates exclusively to the exercise of home-rule powers pursuant to sec. 3, art. XI, of the constitution. It does not in any manner affect existing charters. Granting that in the absence of sec. 63.15, Stats., the city of Superior could accomplish the same purpose under its home-rule powers in the manner provided by sec. 66.001, that fact does not affect its right to proceed under sec. 63.15. There could be no point in proceeding under its home-rule powers when it could accomplish the same purpose under its existing charter. The procedure adopted was the safe and sure way. It avoided many questions which would have been encountered had it attempted to proceed under the home-rule amendment in the manner provided by sec. 66.001.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.