BLECK, Respondent, v. MONONA VILLAGE, Appellant.

*February 2—February 28, 1967.*

192

For the appellant there were briefs by *Immell, Herro, Buehner, DeWitt & Sundby* of Madison, and oral argument by *Robert D. Sundby.*

For the respondent there was a brief and oral argument by *Charles A. Bleck* of Madison, *in pro. per.*

A brief *amicus curiae* was filed by *Julian Bradbury* of Madison, legal counsel for the League of Wisconsin Municipalities.

HANLEY, J.  The following basic issue is presented:

May a village incorporate as a fourth-class city pursuant to its own plan of incorporation and organization and not be governed by state law in such creation and organization?

Sec. 1 of the ordinance reads:

*"Section 1:*  EXERCISE OF HOME RULE AUTHORITY. The Village of Monona, Wisconsin, hereby elects pursuant to Section 3, Article XI, Wisconsin Constitution, and Section 66.01, Wis. Stats., not to be governed by Sections 61.189, 62.08, 62.09 (1), 62.09 (8) (c), and 62.14, Wis. Stats., insofar as said sections conflict with this Charter Ordinance."

It apparently is the theory of the appellant that under home rule it may ignore state law in the transformation from a village to a fourth-class city.

In determining the issue we must first consider the effect of home rule in Wisconsin on the incorporation of municipalities. The incorporating of any city shall be uniform as provided by secs. 31 and 32, art. IV, Const., which read as follows:

**"Special and private laws prohibited.**  SECTION 31. The legislature is prohibited from enacting any special or private laws in the following cases:

" . . .
"9th. For incorporating any city, town or village, or to amend the charter thereof."

**"General laws on enumerated subjects. SECTION 32.** The legislature shall provide general laws for the transaction of any business that may be prohibited by section thirty-one of this article, and all such laws shall be uniform in their operation throughout the state."

Sec. 31, sub. 9, art. IV, Const. (1892), preceded the 1924 adoption of the home-rule amendment (sec. 3, art. XI, Const.) and the 1925 Enabling Act for said amendment (sec. 66.01, Stats.).

Sec. 3, art. XI, Const., provides for certain limitations to municipal home rule.

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. . . ."

The first part of sec. 3, art. XI, Const., makes it clear that cities must be organized pursuant to state law. The home-rule amendment did not abrogate the necessity of villages for following state law before a valid incorporation could occur. Home rule is only applicable once a city is created pursuant to state law. The home-rule amendment could have clearly and completely changed the uniformity requirements of sec. 31, sub. 9, and sec. 32, art. IV, Const., if such a change were desired. The village of Monona by application of home rule has attempted to abrogate the procedure provided by the legislature for villages becoming cities in sec. 61.189, Stats., and certain of the general charter laws of ch. 62.

Use of the village home-rule powers for the incorporation of a city constitutes incorporation by a special charter of the village.

The power to create cities is a sovereign power resting solely with the state. *State ex rel. Mueller v. Thompson* (1912), 149 Wis. 488, 137 N. W. 20; *State ex rel. Sleeman v. Baxter* (1928), 195 Wis. 437, 219 N. W. 858; and *Barth v. Shorewood* (1938), 229 Wis. 151, 282 N. W. 89.

In the *Mueller Case, supra,* the court in considering the constitutionality of a home-rule act prior to the adoption of the home-rule amendment held at pages 496 and 497:

"So while, if the question were open as to whether the legislature can properly delegate power to make or change a city charter, in the sense of determining the form of government and the fundamentals, in short, except by the option law method, it would have to be answered in the negative, it should be regarded as thus ruled by *State ex rel. Boycott v. Mayor, etc., supra,* and subsequent cases.

"The foregoing is reinforced by the plain intent of the constitution that city charters shall be uniform, throughout the state, as nearly as practicable. Before subd. 9 of sec. 31, art. IV, was adopted the general charter law was enacted. The scheme of it was to classify existing cities for general legislation and to afford opportunity, without legislative interference, to adopt an entire charter, or any portion thereof covering any particular subject, in place of an existing special charter or portion thereof. The general law and the new subdivision of sec. 31, art. IV, were companion laws to effect uniformity in city charters. The enactment in question is plainly in violation thereof. Under it facilities for changes in city charters, in number, character, and frequency, regardless of uniformity, would be immeasurably greater than under the system prior to 1891."

We do not believe that the home-rule amendment nullified the law revealed in the above quotation, nor do we believe that the home-rule amendment made such a drastic change by implication. It was not the purpose and intent of the home-rule amendment to vitiate the uniformity requirements of the constitution and to divest the legisla-

ture of its constitutional responsibility to create municipal corporations.

Two cases, decided after the home-rule amendment, clearly support this position:

In *State ex rel. Sleeman v. Baxter, supra,* at pages 445 and 446, this court said:

"The recognized purpose of this amendment was to confer upon cities and villages a measure of self-government not theretofore possessed. . . . On the other hand, it is clear that legislative action in the matter of organization and government of cities and villages is not only contemplated but imperative. The power granted is to 'cities and villages organized pursuant to state law.' This plainly recognizes the existence of state legislation under which cities and villages may be organized. . . . It is plain, therefore, that the constitutional provision not only contemplates legislation authorizing the organization of cities and villages, but it authorizes legislation vesting them with powers appropriate and necessary for the purposes of their organization. . . . Neither is there any purpose apparent from the provision that legislation now existing marks the limit of the power of the legislature over the subject, so that the present method of bringing cities and villages into existence must endure throughout the years after times and conditions have changed and existing provisions have become archaic and inappropriate to the changed conditions, or until changed by constitutional amendment. Legislative power upon this as well as all other subjects still rests with the legislature, and there is no express limitation placed upon the exercise of that power. . . ."

From the foregoing it appears home rule is available to municipal corporations organized pursuant to state law or pursuant to the rules established by the legislature.

This court in the *Barth Case, supra,* in considering the uniformity requirements of the constitution and the home-rule amendment, said on page 157:

"These provisions clearly empower the legislature to create municipal corporations. Whether an urban area shall be incorporated as a village or a city is to be determined by the rule established by the legislature. By legislative enactment (sec. 61.01, Stats.), the inhabitants within the territorial limits there specified determine whether it shall be incorporated as a village. When so incorporated the village has all the powers prescribed by ch. 61, Stats. Sec. 61.58 provides another method by which the electors may determine that a village shall become a city. By sec. 62.06 any district containing a population of 1,500 or more and consisting of and containing an incorporated or unincorporated village may become a city."

The above language indicates that the court believed the legislative procedure for creating cities was still intact and not rendered surplusage by the home-rule amendment.

Along with the limitation that cities must be created pursuant to state law there is another condition in sec. 3, art. XI, Const., which states that legislation of statewide concern intended to affect cities uniformly prevails over local matters.

We believe the legislature intended that the organization of cities be uniform and that it was a matter of statewide concern.

Home rule is the grant of authority to legislate in matters of local concern, such as the licensing of bakeries. *Johnston v. Sheboygan* (1966), 30 Wis. (2d) 179, 140 N. W. (2d) 247, or to establish building heights, as in *State ex rel. Ekern v. Milwaukee* (1926), 190 Wis. 633, 209 N. W. 860.

Before the village of Monona can lawfully attempt to make any elections under the home-rule powers in regard to ch. 62, Stats., the village must first exist as a fourth-class city. This means the village can do nothing about the provisions of ch. 62, until it organizes pursuant to state law.

The trial court correctly concluded that there are two methods by which a village may become a city. One method is to organize as a city under the city manager plan, pursuant to secs. 64.01 to 64.15, Stats. This method is of no concern in the instant case. The other method designed by the legislature is found in sec. 61.189. This section provides a very simple procedure whereby a village with a population of 1,000 can become a fourth-class city without a petition and referendum or charter ordinance procedure. It provides that a two-thirds vote of the village trustees can make the determination if the village is to become a city. The resolution fixes the number and boundaries of the wards of the proposed city and sets the time for the first election of the city mayor and aldermen.

Sec. 61.189 (2), Stats., reads in part as follows:

"(2)   The election shall be noticed and conducted and the result canvassed and certified as in the case of regular village elections and the village clerk shall immediately file with the secretary of state 4 copies of a certification certifying the fact of holding such election and the result thereof and a description of the legal boundaries of such village or proposed city and 4 certified copies of a plat thereof; . . ."

The above requirements must be fulfilled before the secretary of state has any power to issue a certificate of incorporation.

The village of Monona did not fulfill these requirements and, therefore, is not entitled to be issued a city charter.

Compliance with the aforementioned statutory requirements is essential in order to be governed by the general city charter laws. Ch. 62, Stats.

Here the village attempted to bypass sec. 61.189, Stats., and also attempted not to be governed by ch. 62, before any city was duly incorporated. The village's failure to comply was a matter of substance rather than form. Sec.

61.189 calls for an election of aldermen at the first city election. The first city election must take place before the secretary of state can issue a certificate of incorporation. Here the village postponed the first city election of officers and proposed that the existing village officers would carry over until the postponed election took place. It appears to be the legislative intent that an election of city officers by wards be conducted before the secretary of state is empowered to act.

The village, by sec. 4 of the proposed charter ordinance, provided for the election of aldermen at large. We believe the election should be in accordance with the general charter law. Sec. 62.08, Stats., along with sec. 61.189, makes it very clear that wards are to be established, and an election by wards is to be conducted.

The legislature has adopted a specific scheme of city organization. The village of Monona improperly rejected the statutory procedure. Sec. 61.189, Stats., states that once the village becomes a city, it is at that very moment governed by the general city charter law. The city is then bound by ch. 62, until it utilizes the provisions of ch. 66. There does not appear to be any legal way of reversing the order without engaging in judicial legislation.

Counsel for appellant contends that if sec. 61.189, Stats., insofar as it provides for the election of the first mayor and common council is of statewide concern and the provisions of the charter ordinance relating to such election are void, such provisions are severable and the remainder of the charter ordinance is valid.

We do not agree with this contention since it clearly appears that secs. 4, 5, 8, and 9 [1] of the charter ordinance

---

[1] Sec. 5. Relating to veto power of the council; sec. 8 relating to the continuance of the present offices and officers of the village as offices and officers of the city; and sec. 9 relating to the continuance of the present boards and commissions of the village as boards and commissions of the city.

are invalid because they contravene the provisions of sec. 61.189 and ch. 62, Stats.

We conclude the home-rule amendment did not change the existing statutory procedure for the creation of cities. The uniformity requirements of the constitution and the home-rule amendment vest in the state legislature the duty to provide for the creation and organization of municipal corporations, and such corporations cannot be of a local creation or organization.

The statutory procedure found in sec. 61.189, Stats., should be strictly adhered to before a city charter is granted to an aspiring village.

The village of Monona failed to comply with the provisions of sec. 61.189, Stats., and the attempt to incorporate by the adoption of charter ordinance No. 7-66-308 contravenes the law of the state of Wisconsin and is null and void.

*By the Court.*—Judgment affirmed.

HALLOWS and WILKIE, JJ., took no part.

HEFFERNAN, J. (*dissenting*). While I must defer to the inexorable logic of the majority, I respectfully disagree with the major premise upon which its syllogism rests.

The majority opinion appears to rest upon the premise that the constitution prohibits a municipality from changing its form of government by the adoption of a special charter. This is a misconstruction of the proscription of the constitution. The clear prohibition of the constitution is that "The *legislature* is prohibited from enacting any special or private law. . . . 9th. For incorporating any city, town or village, or to amend the charter thereof." (Emphasis supplied.) Sec. 31, art. IV. The only effect of that constitutional provision is to prevent the legislature from tampering on an individual basis with the basic

governmental structure of any city or village. This provision of the constitution has nothing to do with the case at issue—where a local government seeks to alter its own charter pursuant to law. The very purpose of the home-rule amendment is to permit such alteration.

Nor do I find that the home-rule amendment, sec. 3, art. XI, constitutes a limitation in this instance. The majority opinion takes the position that the phrase, "cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government," means that a municipal corporation must first be organized as a city before it can exercise its constitutional option not to be governed as other cities are governed. There is, no doubt, implicit in sec. 3 of art. XI the requirement that there be a properly organized governmental unit that is functionally structured to administer the exercise of the home-rule power. The village of Monona is such a unit "organized pursuant to state law." Under the statutes and the constitution it has the right to determine its local affairs. To become a city and to modify the city charter law in the respects sought, in respects that are of "paramount concern" to the city and not the state, is a proper exercise of home-rule powers. It is important to realize that there was a government in being that could properly speak for the people of the area. For this court to say that what was approved by the representatives of the village of Monona and ratified by the electorate in referendum is a nullity because it was done in one step rather than in two is an exaltation of dubious form over substance, in disregard of the express will of the people.

Fortunately, this severely legalistic interpretation of the powers granted to municipal corporations by the people under the home-rule amendment is limited to the very facts of this case. The only rule of law for which this case is precedent is that a city must first be orga-

nized as a city before it can exercise city home-rule powers. As so properly and narrowly interpreted, it does no great harm to the principles of home rule. In the view of this writer, counsel for appellant correctly states that the "paramount interest" doctrine is the standard used by this court in determining the propriety of home-rule powers where the matter involved is of both local and statewide concern. This opinion does not deviate from that doctrine which has so recently been restated in *Johnston v. Sheboygan* (1966), 30 Wis. (2d) 179, 140 N. W. (2d) 247.

While an excess of caution might have suggested the bifurcated procedure that the majority considers to be the *sine qua non* of the proposed reorganization into a city, common sense dictated the efficent, fair, and reasonable method used in transforming Monona from a village to a city. The writer sees no violence that was thereby done to the axiom that a municipal corporation is a creature of the legislature—all that was done was pursuant to the state law as determined by the legislature. Any deviations therefrom were not only salutary but were so insignificant as to be *de minimis*. No legislative prerogative was slighted, and the will of the people was served by the proposed reorganization. I see no reason for striking down this ordinance. I respectfully dissent from the conclusion of the majority.