REBECCA G. BRADLEY, J.
¶ 52. (concurring). I agree that Wis. Stat. § 66.0502 trumps Milwaukee's residency ordinance and therefore I join the majority opinion. I write separately to point out that the original meaning of the home rule amendment to the *316 Wisconsin Constitution decrees a different interpretation than this court gives. The home rule amendment provides that: "Cities and villages . . . may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. ..." Wis. Const, art. XI, § 3(1). The majority holds that the statute controls over any conflicting city charter ordinance "either (1) when the enactment addresses a matter of statewide concern, or (2) when the enactment with uniformity affects every city or village." Majority op., ¶ 26.
¶ 53. I cannot agree with this interpretation based on the text of the home rule amendment and its original meaning. After examining the constitutional debates and practices surrounding the amendment's adoption, I conclude that a legislative enactment preempts a conflicting city charter ordinance under the home rule amendment only when the enactment both concerns a matter of statewide concern and with uniformity affects every city or village. See Wis. Const, art. XI, § 3(1). Here, Wis. Stat. § 66.0502 meets both the statewide concern and uniformity requirements; therefore, § 66.0502 prevails over the City of Milwaukee's residency requirement found in section 5-02 of the City's charter. As a result, although I disagree with the majority's interpretation and application of the home rule amendment, I agree with the end result: Wis. Stat. § 66.0502 precludes the City of Milwaukee from enforcing its residency requirement.
I. INTERPRETATION OF THE HOME RULE AMENDMENT
¶ 54. The methodology used to interpret amendments to the Wisconsin Constitution is well estab *317 lished. See, e.g., Dairyland Greyhound Park, Inc. v. Doyle, 2006 WI 107, ¶ 19, 295 Wis. 2d 1, 719 N.W.2d 408; id., ¶¶ 114-17 (Prosser, J., concurring in part, dissenting in part); Thompson v. Craney, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996). We independently interpret the Wisconsin Constitution,[1] "to give effect to the intent of the framers and of the people who adopted it; and it is a rule of construction applicable to all constitutions that they are to be construed so as to promote the objects for which they were framed and adopted." State v. Cole, 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328 (quotation marks and citations omitted). We may look to "three primary sources in determining the meaning of a constitutional provision: [1] the plain meaning, [2] the constitutional debates and practices of the time, and [3] the earliest interpretations of the provision by the legislature, as manifested through the first legislative action following adoption." Dairyland Greyhound Park, 295 Wis. 2d 1, ¶ 19.[2] A focus on the first two sources shows the text of the home rule amendment authorizes cities and villages to "determine their local affairs and government" *318 subject only to the Wisconsin Constitution and a legislative enactment both addressing a statewide concern and with uniformity affecting every city or every village. See Wis. Const, art. XI, § 3(1). I give priority to the plain meaning of the words of the home rule amendment. See Dairyland Greyhound Park, 295 Wis. 2d 1, ¶ 117 (Prosser, J., concurring in part, dissenting in part).
A. Plain meaning
¶ 55. To understand the original meaning of the home rule amendment, I begin with the text of the amendment. The home rule amendment provides, in pertinent part: "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village." Wis. Const, art. XI, § 3(1). The structure of this sentence reveals the meaning of the home rule amendment. The first clause provides: "Cities and villages organized pursuant to state law may determine their local affairs and government." See id. This independent clause grants power to cities and villages to govern "their local affairs and government." See id. The second clause, a dependent clause, modifies the preceding independent clause and places two limitations on the grant of power to cities and villages. First, the constitution may limit city or village authority to determine its local affairs. The second limitation subordinates the power of cities and villages to: "such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village." See id. This second limitation contains two requirements evidenced by its *319 grammatical construction.[3] The subject of this limitation is "enactments of the legislature," while the verb is "shall affect." The phrase "of statewide concern" specifies the type of enactments that supersede local governance, and the phrase "as with uniformity" specifies how those enactments "shall affect" every city or every village. Because one phrase modifies the subject and the other phrase modifies the verb, both modifiers are necessary, rather than unilaterally sufficient requirements. In other words, the text of the home rule amendment authorizes cities and villages to "determine their local affairs and government" subject only to the Wisconsin Constitution and a legislative enactment both addressing a statewide concern and with uniformity affecting every city or every village. The "subject to" phrase accords priority[4] over local governance to both the constitution and enactments of the legislature of statewide concern, provided the uniformity requirement is met. In the event of conflict between a local enactment and either the constitution or an enactment of the legislature (1) where the subject matter is of statewide concern and (2) that applies with uniformity to every city and village, the. local enactment must give way. The text of the home rule amendment cannot be reasonably or grammatically read in any other way.
¶ 56. Much of this court's precedent, including our recent decision in Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶ 101, 358 Wis. 2d 1, 851 N.W.2d 337, fails to apply the plain meaning of the home rule *320 amendment. Nevertheless, the majority relies entirely upon the home rule framework set forth in Madison Teachers without any attempt to explain how the text of the amendment supports that framework. The majority states:
[0]ur home rule case law instructs us that, when reviewing a legislative enactment under the home rule amendment, we apply a two-step analysis. First, as a threshold matter, the court determines whether the statute concerns a matter of primarily statewide or primarily local concern. If the statute concerns a matter of primarily statewide interest, the home rule amendment is not implicated and our analysis ends. If, however, the statute concerns a matter of primarily local affairs, the reviewing court then examines whether the statute satisfies the uniformity requirement. If the statute does not, it violates the home rule amendment.
Majority op., ¶ 25 (quoting Madison Teachers, 358 Wis. 2d 1, ¶ 101) (emphasis added). To conclude as the majority does, that analysis of the home rule amendment stops if the legislative enactment at issue addresses an issue primarily of statewide concern and that the uniformity requirement applies only to legislation concerning issues primarily of local concern, simply does not comport with the text of the amendment.
¶ 57. As emphasized above, Madison Teachers did not purport to rely on the text of the home rule amendment to craft the analytical framework employed by the majority opinion here. Instead, Madison Teachers relied on case law concerning the home rule amendment dating back to 1926. Id., ¶¶ 96-101, 117 (citing State ex rel. Ekern v. City of Milwaukee, 190 Wis. 633, 640, 209 N.W. 860 (1926)). The problem with *321 Madison Teachers' reliance on precedent and in turn the majority opinion's employment of the analytical framework from Madison Teachers is that no prior case reconciles the text of the home rule amendment with this judicially-created analytical framework.[5]
¶ 58. Where even long-standing precedent contravenes the constitution, it is ripe for reconsideration.
"Stare decisis is not... a universal, inexorable command," especially in cases involving the interpretation of the Federal Constitution. Erroneous decisions in such constitutional cases are uniquely durable, because correction through legislative action, save for constitutional amendment, is impossible. It is therefore our duty to reconsider constitutional interpretations that "depar[t] from a proper understanding" of the Constitution.
Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 954-55 (1992)(Rehnquist, C.J., concurring in part, dissenting in part) (alteration in original)(internal citations omitted). "The principle of stare decisis does not compel us to adhere to erroneous precedents or refuse to correct our own mistakes." State v. Outagamie Cty. Bd. of Adjustment,
, ¶ 31, 244 Wis. 2d 613, 628 N.W.2d 376. "Our constitutional watch does not cease merely because we have spoken before on an issue; when it becomes clear that a prior constitutional interpretation is unsound we are obliged to reexamine the question." Casey, 505 U.S. at *322 955 (Rehnquist, C.J., concurring in part, dissenting in part). The durability of erroneous decisions interpreting the home rule amendment under the Wisconsin Constitution illustrates the danger of rigidly adhering to the doctrine of stare decisis at the expense of fidelity to the constitution. It is this court's duty to reconsider interpretations of the home rule amendment that depart from a proper understanding of that constitutional provision. This court should be "ready at all times to subordinate any possible, though unjustifiable, pride of opinion to a justifiable pride in trying to decide rightly." Ekern, 190 Wis. at 635.
B. Constitutional debates and practices
¶[ 59. The plain meaning interpretation of the home rule amendment explained above finds support in the historical context in which the home rule amendment was adopted, including relevant statements made by the framers of the amendment as well as public statements made by proponents of the amendment who communicated the meaning of the amendment to voters. Understanding the context in which the home rule amendment was proposed and ratified is essential because "[t]he meaning of the constitutional provision having been once firmly established as of the time of its adoption, such meaning continues forever, unless it is changed or modified by the Constitution." State ex rel. Bare v. Schinz, 194 Wis. 397, 403, 216 N.W. 509 (1927). Unlike statutory interpretation where consultation of extrinsic sources is typically limited to resolving ambiguities,[6] examination of constitutional debates and historical practices *323 from extrinsic sources is necessary in constitutional interpretation to ascertain original meaning:
The reasons we employ a different methodology for constitutional interpretation are evident. Constitutional provisions do not become law until they are approved by the people. Voters do not have the same access to the "words" of a provision as the legislators who framed those words; and most voters are not familiar with the debates in the legislature. As a result, voters necessarily consider second-hand explanations and discussion at the time of ratification. In addition, the meaning of words may evolve over time, obscuring the original meaning or purpose of a provision. The original meaning of a provision might be lost if courts could not resort to extrinsic sources. Finally, interpreting a constitutional provision is likely to have a more lasting effect than the interpretation of a statute, inasmuch as statutory language can be more easily changed than constitutional language. Thus, it is vital for court decisions to capture accurately the essence of a constitutional provision.
Dairyland Greyhound Park, 295 Wis. 2d 1, ¶ 116 (Prosser, J., concurring in part, dissenting in part). Consultation of the contemporaneous writings of the framer of a constitutional amendment may aid in ascertaining original meaning "not because they were Framers and therefore their intent is authoritative and must be the law; but rather because their writings, like those of other intelligent and informed people of the time, display how the text of the Constitution was originally understood." Antonin Scalia, A Matter of Interpretation 38 (Amy Gutmann ed., 1997).
¶ 60. Accordingly, it is first essential to understand the context in which the home rule amendment was drafted and proposed. The home rule amendment arose as a direct result of this court's decision in State *324 ex rel. Mueller v. Thompson, 149 Wis. 488, 137 N.W. 20 (1912).[7] In Mueller, this court invalidated a 1911 statute, known as the "home rule act," which authorized cities to amend their city charters. Id. at 490, 493-94, 497. The "home rule act" at issue in Mueller provided:
"Every city, in addition to the powers now possessed, is hereby given authority to alter or amend its charter, or to adopt a new charter by convention, in the manner provided in this act, and for that purpose is hereby granted and declared to have all powers in relation to the form of its government, and to the conduct of its municipal affairs not in contravention of or withheld by the constitution or laws, operative generally throughout the state."
Id. at 493-94. Operating under the "home rule act," the City of Milwaukee's Common Council adopted a resolution to amend its charter to allow the City to operate an ice plant. Id. at 498-99 (Timlin, J., concurring). After the resolution passed, the City Clerk refused to place the proposed amendment of the City's charter on the ballot. Id. at 489. The State pursued a mandamus action against the City Clerk that the circuit court granted. Id. at 489. This court reversed and held that the City Clerk had no duty to place the proposed amendment to the City's charter on the ballot because the "home rule act" that granted the authority to cities to amend their charters was an unconstitutional delegation of legislative power. Id. at 491-92, 497. The court then alluded to the possibility of a home rule amendment to our constitution:
*325 It is correctly claimed on the one side, and not effectually, if at all, denied upon the other, that in most cases where legislation of the nature of that in question has been adopted it was preceded by a constitutional amendment expressly authorizing it, while in those not so preceded the legislation was condemned as unconstitutional.
Id. at 497-98.
¶ 61. Following the invalidation of the "home rule act" in Mueller, work on a home rule amendment culminated in a joint resolution "[t]o amend section 3 of article XI of the constitution, relating to powers of cities and villages"[8] that passed both houses in 1921 and 1923 and was set for the 1924 general election. Wisconsin Legislative Reference Bureau, State of Wisconsin Blue Book 219 (2015-16). A joint resolution set forth the amendment, in pertinent part:
Resolved by the senate, the assembly concurring, That section 3 of article XI of the constitution be amended to read: (Article XI) Section 3: Cities and villages organized pursuant to state law It shall be the duty of the legislature — and- they are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature, to provide-for-the-organization of cities and incorporated villages^ and to restrict their-power of taxation, assessment, borrowing-money^ contracting debts-and loaning theú-eredit,- so as to prevent abuses in assessments and taxation, and-in-contracting debts by such municipal-corporations.
*326 Jt. Res. 18-S (Wis. 1923)(italics and internal quotation marks omitted).[9]
¶ 62. Not only was the home rule amendment an outgrowth of our decision in Mueller, but the attorney who represented the City Clerk in that case, Daniel W. Hoan, was a primary drafter of the home rule amendment. See Daniel W. Hoan, Brief for Wisconsin League of Municipalities as Amicus Curiae at 2 (No. 252) in Baxter, 195 Wis. 437. Hoan, who served as mayor of Milwaukee from 1916-1940,[10] filed an amicus brief on behalf of the League of Municipalities in Baxter, in which he set forth a detailed account of his intent in drafting the home rule amendment. Id. Hoan first explained in his amicus brief in Baxter that he " drafted this Home Rule Amendment to overcome the difficulties pointed out in [Mueller]" and that he presented the amendment's wording and meaning to city attorneys around the state and to legislative committee members and that during those presentations "no other interpretation of this amendment was there offered except as outlined in this brief." Id. at 2-3. He then explained that he determined that striking certain language from Article XI, Section 3, pertaining to legislative authority, to create the grant of authority to cities and villages, rather than adding a new section to the constitution, would provide greater clarity as to the purpose and meaning of the home rule amendment. Id. at 8. He stated that the home rule amendment makes "certain that cities and villages shall have a grant of power to determine their local affairs and govern *327 ment." Id. at 12-13. To ensure that cities and villages received this authority under the home rule amendment, the amendment contains only two limitations on local power: " 'subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village.' " Id. at 13 (quoting Wis. Const, art. XI, § 3(1)). Hoan explains:
We ask the court to particularly take note of the words "only" and "uniformity." We ask the court likewise to note carefully the wording of this clause as leaving no doubt that all parts of it are descriptive of the type of legislative act that the local power is subject to. We submit that this wording is not ambiguous as other constitutional Home Rule amendments may be. It does not say — subject to state laws, subject to state laws of state-wide concern, or subject to laws uniformly affecting cities, but it does say — subject only to such state laws as are therein defined, and these laws must meet two tests: First — do they involve a subject of state-wide concern, and second — do they with uniformity affect every city or village?
Id. at 13-14 (emphasis added) (italics in original). There could not be a clearer confirmation of the original meaning of the home rule amendment than this. The person who drafted the home rule amendment specifically clarified that a legislative enactment must both involve a matter of statewide concern and with uniformity affect every city or every village.
¶ 63. In addition to the framer's interpretation of the home rule amendment, between 1919 and 1924, newspapers from across the state published content addressing the need for a home rule amendment and providing voters with information regarding the meaning of home rule amendment. For example, in 1919, *328 Hoan, who was then Mayor of Milwaukee, wrote a letter to the editor in support of the home rule amendment, which had recently failed to pass the Senate by a single vote. Daniel W. Hoan, Letter to the Editor, Voice of the People, The Capital Times, Apr. 22,1919, at 4. Mayor Hoan's letter strongly advocated for the passage of the home rule amendment to address the problem of the legislature having to review numerous proposed bills dealing with purely local matters. Id. He stated: "At this time when everyone in the legislature is crying out about the long session, why should we continue a system which piles up hundreds of bills affecting cities to be considered by that body." Id.
¶ 64. The sentiment that a home rule amendment was necessary to not only free the legislature from addressing purely local matters, but also to grant authority to cities and villages to adopt amendments to their own charters to deal with such matters was repeated in several newspaper articles. In 1921, The Capital Times reported:
While the amendment was broad in its application covering other cities of the state, the principle purpose of passing it was to aid Milwaukee. It is estimated that over 25 percent of the measures before the Wisconsin legislature directly affecting Milwaukee and a home rule [] could be passed upon locally if home rule were in force.
Home Rule Amendment Is Nullified, The Capital Times, Jan. 27, 1921, at 1. Similarly, the Oshkosh Daily Northwestern reported that according to Mayor Hoan, " City legislation of only local interest takes up at least a month of the legislature's time each session." Income Tax Bills Posted for Hearing, Oshkosh Daily Northwestern, Mar. 2, 1921, at 11. The Appleton Post-Crescent stated " one-third of state legislation has to do *329 with matters pertaining to municipalities and state legislators have not the training and experience to deal efficiently with mere local problems." Home Rule Bill is Indorsed By City Officers, Appleton Post-Crescent, June 8,1922, at 1. Newspapers cited examples of these problematic bills concerning purely local matters, which under the home rule amendment could be dealt with locally by cities and villages. For example, one recently enacted bill allowed a city office to install a telephone. Joseph P. Harris, Questions and Answers, The Capital Times, Jan. 19, 1924, at 9. Another recently introduced bill called for the insertion of a comma in one City's charter, which would clarify whether the mayor had the authority to veto a resolution. Henry Noll, Home Rule Law Big Step Ahead, Urges M'Gregor, Wisconsin State Journal, July 20, 1924.
f 65. Along with the need for the home rule amendment, newspaper content also confirms the preservation of state legislative power over cities and villages, which was communicated to voters prior to the 1924 general election. Mayor Hoan explained: "The state will not lose its power over cities. . . for it can prohibit them from doing anything by making state wide application to all measures passed. Cities will be given a free hand in local affairs, without becoming free from state legislation. . . ." Income Tax Bills Posted for Hearing, Oshkosh Daily Northwestern, Mar. 2, 1921, at 11 (emphasis added). In a question and answer column that appeared in The Capital Times, political science Professor Joseph P. Harris explained that "Home rule secures to cities and villages a larger share in the control over matters of purely local concern." Joseph P. Harris, Questions and Answers, The Capital Times, Jan. 19,1924, at 9. The Secretary of the *330 Wisconsin League of Municipalities, Ford H. MacGregor, stated " 'The home rule amendment is intended to give cities and villages greater powers of local self-government. . . . The amendment will give municipalities of the state power to draft and adopt amendments to their own charters without having to go to the legislature to get the general charters law amended.'" Cities are Urged to Favor 'Home Rule,' Manitowoc Herald-Times, July 3, 1924, at 3. In a Wisconsin State Journal article, MacGreger also corroborates the priority accorded to state legislative enactments of general applicability to all cities and villages under the home rule amendment:
While this home rule amendment gives cities and villages greater power of local self-government, it in no way ties the hands of the state legislature in matters of state-wide concern .... It does prevent the legislature from interfering in purely local affairs but it does not prevent the state from passing any law in which the state as a whole is interested. Any general law relative to public health, education, the regulation of public utilities, the police power, fire protection, or any other subject of state-wide interest may be enacted by the legislature anytime provided it applies to all cities or villages. Of course, any home rule charter conflicting with any of these general laws would be void.
Henry Noll, Home Rule Law Big Step Ahead, Urges M'Gregor, Wisconsin State Journal, July 20, 1924. (emphasis added).
¶ 66. Newspaper articles leading up to the 1924 general election reveal that proponents of the home rule amendment communicated two main points about the amendment to voters. First, the home rule amendment was necessary to grant authority to cities and villages to address matters of purely local concern, *331 which in turn would free the legislature from the burden of considering large volumes of proposed legislation relating to purely local concerns. Second, the home rule amendment would expand authority to cities and villages, but would not limit legislative authority over statewide matters as long as the legislation relating to a statewide matter was with uniformity applied to all cities and villages. The original meaning of the home rule amendment communicated to the voters who ratified the amendment, along with the interpretation detailed by the drafter of the amendment, reinforce the plain meaning analysis above and collectively support the interpretation that a legislative enactment prevails over a conflicting city charter ordinance under the home rule amendment when the enactment both concerns a matter of statewide concern and affects every city or village with uniformity. Here, Wis. Stat. § 66.0502 meets both requirements.
II. WISCONSIN STAT. § 66.0502
¶ 67. As the majority opinion describes, Wis. Stat. § 66.0502 "prohibits cities, villages, towns, counties, and school districts from requiring their employees to reside within their jurisdictional limits." Majority op., ¶ 3 (footnote omitted). Section 66.0502 conflicts with the City of Milwaukee's residency requirement found in section 5-02 of the City's charter. Id. Under the original meaning of the home rule amendment, to prevail over the City's residency requirement, § 66.0502 must both (1) address a statewide concern and (2) with uniformity affect every city or every village.
*332 A. Statewide concern requirement
¶ 68. In determining whether a legislative enactment pertains to a local or a statewide concern,
our court has outlined three areas of legislative enactment: (1) Those that are "exclusively of state-wide concern;" (2) those that "may be fairly classified as entirely of local character;" and (3) those which "it is not possible to fit. . . exclusively into one or the other of these two categories."
State ex rel. Michalek v. LeGrand, 77 Wis. 2d 520, 526-27, 253 N.W.2d 505 (1977) (footnotes omitted). As for this third category, referred to as a "mixed bag," courts have applied "the test of paramountcy" to determine whether "a challenged legislative enactment, state or local, possessing aspects of 'state-wide concern' and of 'local affairs,' is primarily or para-mountly a matter of 'local affairs and government' under the home rule amendment or of 'state-wide concern ....'" Id. at 527-28.
¶ 69. However, applying the original meaning of the home rule amendment eliminates any need for the "test of paramountcy" — a judicial creation conspicuously absent from the text of the constitution. This is because the purpose of the home rule amendment, as discussed in Part I, was to empower cities and villages to address matters of purely local concern rather than require legislative action to resolve these matters. When a legislative enactment involves any degree of statewide concern, it will not violate the home rule amendment so long as the enactment with uniformity affects every city or every village.
¶ 70. Here, Wis. Stat. § 66.0502 involves matters of statewide concern; therefore it does not address concerns that are purely local. First, § 66.0502(1) pro *333 vides: "The legislature finds that public employee residency requirements are a matter of statewide concern." This legislative public policy statement must be given great weight even though the court must make the ultimate determination. Madison Teachers, 358 Wis. 2d 1, ¶¶ 125, 128; Van Gilder, 222 Wis. at 73-74. Second, the legislature's decision to apply § 66.0502 to all "local governmental units" meaning "any city, village, town, county, or school district" indicates that the legislative enactment involves issues of statewide concern.[11] See Wis. Stat. § 66.0502(2)-(3). Finally, the prohibition on residency requirements under § 66.0502 addresses issues of public welfare, the free movement of citizens, and the recruitment of workers — all matters of statewide concern. In sum, because Wis. Stat. § 66.0502 addresses issues of statewide concern, it cannot be categorized as a legislative enactment addressing a purely local concern.
B. Uniformity requirement
¶ 71. As referenced above, Wis. Stat. § 66.0502 applies to any "city, village, town, county, or school district," and therefore, on its face, is uniform. Majority op., ¶ 36. Accordingly, I agree with the majority that § 66.0502 satisfies the uniformity requirement of the home rule amendment. See majority op., ¶¶ 34-39.
*334 III. CONCLUSION
f 72. Under the home rule amendment, a legislative enactment prevails over a conflicting city charter ordinance when the enactment both concerns a matter of statewide concern and with uniformity affects every city or village. See Wis. Const, art. XI, § 3(1). This interpretation is based on the plain meaning of the home rule amendment as reflected in the history of the amendment and the constitutional debates and practices at the time the amendment was adopted. Here, Wis. Stat. § 66.0502 meets both the statewide concern and the uniformity requirements.
f 73. Although I disagree with the majority's interpretation of the home rule amendment, I agree that Wis. Stat. § 66.0502 precludes the City of Milwaukee from enforcing its residency requirement. Accordingly, I respectfully concur.

 Thompson v. Craney, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996).

 I do not address legislative interpretations to determine the meaning of the home rule amendment because
In the performance of assigned constitutional duties each branch of the Government must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others. .. . Many decisions of this Court, however, have unequivocally reaffirmed the holding of Marbury v. Madison that '(i)t is emphatically the province and duty of the judicial department to say what the law is.[1]
United States v. Nixon, 418 U.S. 683, 703 (1974)(quoting Marbury v. Madison, 5 U.S. 137, 177, 1 Cranch 137, 2 L.Ed. 60 (1803))(internal citation omitted).

 "Words are to be given the meaning that proper grammar and usage would assign them." Antonin Scalia & Bryan A. Gamer, Reading Law: The Interpretation of Legal Texts 140 (2012).

 Id. at 127.

 See, e.g., Thompson v. Kenosha Cty., 64 Wis. 2d 673, 221 N.W.2d 845 (1974); Van Gilder v. City of Madison, 222 Wis. 58, 267 N.W. 25 (1936); State ex rel. Sleeman v. Baxter, 195 Wis. 437, 219 N.W. 858 (1928); State ex rel. Ekern v. City of Milwaukee, 190 Wis. 633, 209 N.W. 860 (1926); State ex rel. Harbach v. City of Milwaukee, 189 Wis. 84, 86, 206 N.W. 210 (1925).

 State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 50, 271 Wis. 2d 633, 681 N.W.2d 110.

 Daniel W. Hoan, Brief for Wisconsin League of Municipalities as Amicus Curiae at 2 (No. 252) in State ex rel. Sleeman v. Baxter, 195 Wis. 437, 219 N.W. 858 (1928).

 Jt. Res. 39-S (Wis. 1921); Jt. Res. 34 (Wis. 1923).

 A subsequent change in the home rule amendment from "are hereby empowered, to" to "may" is not pertinent to my analysis.

 Edward S. Kerstein, Milwaukee's All-American Mayor: Portrait of Daniel Webster Hoan 82, 178 (1966).

 This idea was contemplated by the drafter of the home rule amendment, who stated: "For example, if the legislature passes a bill uniformly affecting all cities . .. the fact that the legislature acted creates an assumption in legal minds that the subject matter must be of state-wide concern. See Daniel W. Hoan, Brief for the Wisconsin League of Municipalities as Amicus Curiae at 19 (No. 252) in Baxter, 195 Wis. 437.