THOMPSON and others, Appellants, v. KENOSHA COUNTY, Respondent.

*No. 204. Argued September 4, 1974.—Decided October 1, 1974.*
(Also reported in 221 N. W. 2d 845.)

674

676

For the appellants there was a brief by *Curtis M. Kirkhuff* of Madison, attorney, and *Cecil T. Rothrock* of Kenosha, of counsel, and oral argument by *Mr. Kirkhuff*.

For the respondent there was a brief by *Joseph Salituro*, corporation counsel, and oral argument by *Frank V. Volpintesta*, acting corporation counsel.

A brief amicus curiae was filed by *Harold H. Fuhrman* and *Wickert & Fuhrman*, attorneys, and *John P. Roemer* of counsel, all of Milwaukee, for the League of Suburban Municipalities.

WILKIE, C. J. The threshold issue here is whether plaintiffs have standing under sec. 269.56, Stats., to challenge the constitutionality of sec. 70.99. They do.

Since the suit seeks a declaratory judgment, the standing question must be answered based on the criteria contained in sec. 269.56, Stats., the Declaratory Judgments Act. Sec. 269.56 provides in part:

"(1) SCOPE. Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. . . .

"(2) POWER TO CONSTRUE, ETC. Any person . . . whose rights, status or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute [or municipal] ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder. . . .

"
". . .

"(5) ENUMERATION NOT EXCLUSIVE. The enumeration in subsections (2), (3) and (4) does not limit or restrict

the exercise of the general powers conferred in subsection (1) in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

"...

"(12) CONSTRUCTION. This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

This court first stated in *State ex rel. La Follette v. Dammann* [3] and has repeated numerous times since,[4] that there are four general conditions precedent to obtaining declaratory relief under this statute:

"(1) There must exist a justiciable controversy—that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it.

"(2) The controversy must be between persons whose interests are adverse.

"(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

"(4) The issue involved in the controversy must be ripe for judicial determination. Borchard, Declaratory Judgments, pp. 26–57." [5]

The scope of review on appeal here from an order sustaining or overruling a demurrer to a declaratory judg-

---

[3] (1936), 220 Wis. 17, 264 N. W. 627.

[4] *See, e. g., Slawek v. Stroh* (1974), 62 Wis. 2d 295, 306, 215 N. W. 2d 9; *Hancock v. Regents of University of Wisconsin* (1973), 61 Wis. 2d 484, 492, 213 N. W. 2d 45; *Pension Management, Inc. v. DuRose* (1973), 58 Wis. 2d 122, 127, 128, 205 N. W. 2d 553; *American Medical Services, Inc. v. Mutual Federal Savings & Loan Asso.* (1971), 52 Wis. 2d 198, 203, 188 N. W. 2d 529; *Waukesha Memorial Hospital v. Baird* (1970), 45 Wis. 2d 629, 634, 173 N. W. 2d 700.

[5] *State ex rel. La Follette v. Dammann, supra,* footnote 3, at page 22.

ment complaint is well stated in *Waukesha Memorial Hospital v. Baird:* [6]

". . . When there is a demurrer to a complaint for a declaratory judgment, the question presented initially is not whether the complaint so states a meritorious cause of action that the plaintiffs should prevail on the merits if, in fact, the facts alleged are true, but rather it poses the question of whether the controversy is one which should be considered and heard on the merits. An order overruling the demurrer and holding that a proper cause of action for declaratory judgment exists permits the exploration of the merits. The question raised on appeal is simply whether the declaratory judgment device may be properly used to adjudicate the plaintiffs' claim."

Defendant argues that plaintiffs have no standing to maintain this action because the complaint nowhere alleges that they are adversely affected by sec. 70.99, Stats., and the adoption of the countywide assessor system by Kenosha county. Thus, argues defendant, the complaint does not show what "legally protectible interest" plaintiffs have, nor that the interest is "adverse" to defendant's interests. Defendant is wrong.

Liberally construed the plaintiffs' complaint stands as a taxpayers' suit to enjoin illegal governmental expenditure. True, the complaint does not specifically allege that the plaintiffs, individually or as a class, have suffered any loss; that defect however is not fatal. The allegation that one taxpayer is suing to vindicate rights of all taxpayers may be implied.[7] As to the allegation of pecuniary loss, the complaint does state that plaintiffs are taxpayers and that sec. 70.99, Stats., providing for creation of a countywide assessor system, is unconstitutional. Under sec.

---

[6] *Supra,* footnote 4, 45 Wis. 2d at page 633.

[7] In *Cawker v. Milwaukee* (1907), 133 Wis. 35, 38–40, 113 N. W. 417, the court held that to be construed as a taxpayer's action, complaint need not state on its face that the suit is brought on behalf of all taxpayers.

70.99 (12) the state and the county jointly finance the operation of the system. Thus the statute does require expenditure of public money, and if the statute were held unconstitutional, this expenditure would also be illegal. That sufficiently establishes plaintiffs' pecuniary loss, according to *S. D. Realty Co. v. Sewerage Comm.*: [8]

"Any illegal expenditure of public funds directly affects taxpayers and causes them to sustain a pecuniary loss. This is because it results either in the governmental unit's having less money to spend for legitimate governmental objectives, or in the levy of additional taxes to make up for the loss resulting from the expenditure. Though the amount of the loss, or additional taxes levied, has only a small effect on each taxpayer, nevertheless it is sufficient to sustain a taxpayers' suit. *Bechthold v. Wauwatosa* (1938), 228 Wis. 544, 550, 277 N. W. 657, 280 N. W. 320. In *Wagner v. Milwaukee* (1928), 196 Wis. 328, 330, 220 N. W. 207, it was stated:

" 'The illegal disbursement of this money would constitute an invasion of the funds of the city in which each individual taxpayer has a substantial interest, notwithstanding the fact that the payment of this sum would not necessarily result in increased taxation. *The fact that the ultimate pecuniary loss to the individual taxpayer may be almost infinitesimal is not controlling.*' (Emphasis supplied.)" [9]

Taxpayers' actions have been utilized to contest the validity of a variety of governmental activities accompanied by expenditure of public moneys. [10]

---

[8] (1961), 15 Wis. 2d 15, 112 N. W. 2d 177.

[9] *Id.* at page 22. *See also: Democrat Printing Co. v. Zimmerman* (1944), 245 Wis. 406, 410, 14 N. W. 2d 428, where the court held that it was immaterial whether the illegal expenditures resulted in a net saving: "In case of an illegal contract, the amount to be expended under the contract is the amount that controls, not the difference between that amount and the amount that would be expended under a legal contract."

[10] In *Columbia County v. Wisconsin Retirement Fund* (1962), 17 Wis. 2d 310, 116 N. W. 2d 142, the court held a taxpayer had

Thus we conclude that plaintiffs here have standing to maintain this declaratory judgment action since we construe the complaint to contain an allegation that plaintiffs, as taxpayers, suffered pecuniary loss.

On the merits, three issues are raised on this appeal:

1. Does sec. 70.99, Stats., violate art. XIII, sec. 9 of the Wisconsin Constitution by essentially allowing county boards to appoint officers of cities, towns, and villages?

2. Does sec. 70.99, Stats., violate art. XI, sec. 3 of the Wisconsin Constitution by illegally depriving villages and cities of the right to determine their own affairs?

3. Does sec. 70.99, Stats., violate art. IV, sec. 23 of the Wisconsin Constitution by creating a nonuniform system of town government?

1. *Does sec. 70.99, Stats., violate art. XIII, sec. 9 of the Wisconsin Constitution by essentially allowing county boards to appoint officers of cities, towns, and villages?*

Art. XIII, sec. 9 of the state constitution provides as follows:

"SECTION 9. All county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties, or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct. All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. All other

standing to seek a declaratory judgment challenging the constitutionality of a statute requiring 26 counties to be included in the Wisconsin Retirement Fund. The court said: ". . . the taxpayer alleged in his complaint a direct pecuniary loss to him as a taxpayer of the state of Wisconsin and to other taxpayers similarly situated. This allegation was admitted by the demurrer and meets the requirements of the taxpayer's action for his own injury as declared in *S. D. Realty Co. v. Sewerage Comm.* (1961), 15 Wis. 2d 15, 112 N. W. 2d 177."

officers whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people or appointed, as the legislature may direct."

Plaintiffs argue that since under sec. 70.99, Stats., the county assessor performs functions previously performed by city, village, and town assessors, the county assessor stands in the shoes of such assessors and becomes a city, village, or town officer, rather than a county officer. Therefore, according to plaintiffs, sec. 70.99, which allows counties to appoint the county assessor, violates the clear command of art. XIII, sec. 9, that officers of these local governmental units may be appointed or elected only by the electors or governing body of such governmental units.

As defendant points out, however, the basic flaw in this argument is the unsupported assumption that the county assessor is not a county officer. Sec. 70.99, Stats., speaks to the contrary. The position is labeled "county" assessor, and the officeholder performs functions throughout the entire county. If plaintiffs' assertions were correct the assessor would simultaneously have to be an officer of every village, city and town in the county. Clearly, the county assessor is a county official, appointed by the county. Such appointment is not only consistent with, but also required by art. XIII, sec. 9, of the Wisconsin Constitution. Therefore, plaintiffs' claim that sec. 70.99 violates this constitutional provision must be rejected.

2. *Does sec. 70.99, Stats., violate art. XI, sec. 3 of the Wisconsin Constitution by illegally depriving villages and cities of the right to determine their own affairs?*

The portion of art. XI, sec. 3 of the Wisconsin Constitution known as the home-rule amendment was added to the constitution in 1924, and provides, in part, as follows:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs

and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. . . ."

Plaintiffs argue that sec. 70.99, Stats., violates this provision because the matter of tax assessment is primarily of local rather than statewide concern, and because the effect of this statute on city and village government is nonuniform, *i.e.*, the cities and villages in Kenosha county have no office of assessor, while the cities and villages in the rest of the state do have such office.

Defendant argues that sec. 70.99, Stats., does involve matters of statewide concern.

Art. XI, sec. 3 of the constitution places two limitations on the legislature's power to enact statutes interfering with city and village affairs: (1) The subject of such statutes must be a matter of statewide concern; and (2) such statutes must uniformly affect all cities and villages. These two limitations will be separately considered.

A. *Statewide concern.*

In *Muench v. Public Service Comm.*[11] holding that the state could not delegate to county boards the power to approve construction of dams on navigable waterways, in part because navigable waterways are matters of statewide concern, the court discussed the distinction between local and statewide affairs:

"As to some subjects of legislative action it is possible to say that they are exclusively of state-wide concern, while others may be fairly classified as entirely of local character, affecting only the interests of the people in a particular locality of the state. However, as to many subjects of legislative action, it is not possible to fit them exclusively into one or the other of these categories. . . . It would therefore seem that the test which ought to be applied in determining the validity of delegation of leg-

[11] (1952), 261 Wis. 492, 53 N. W. 2d 514, 55 N. W. 2d 40.

islative power in such a case is that of paramount interest." [12]

Certainly the subject of property tax assessment fits into the "mixed" category. Local governments obviously have a significant interest in the subject, since property taxes raise a substantial portion of their revenues.

On the other hand, the state has an overriding interest in the whole subject of taxation. In *State ex rel. Thomson v. Giessel* [13] the court discussed "some general rules of taxation":

". . . The legislature has plenary power over the whole subject of taxation. It may select the objects therefor, determine the amount of taxes to be raised, the purposes to which they will be devoted, and the manner in which property shall be valued for taxation. It may exempt property from taxation and limit the exercise of the taxing power of municipal corporations. These rules are subject only to constitutional restrictions and limitations."

In commenting on this portion of the *Giessel* opinion the court, in *Plymouth v. Elsner*,[14] said: "Such plenary

[12] *Id.* at pages 515f, 515g. Although the court made this comment in the context of discussing the meaning of art. IV, sec. 22 of the Wisconsin Constitution, as the court pointed out later in the opinion, the meaning of state-wide and local affairs under this section and under art. XI, sec. 3 is for all intents and purposes the same: "Decisions of this court arising under the 'home-rule' amendment of our constitution (art. XI, sec. 3) throw considerable light upon the question of what subjects of legislative action are of primary state-wide concern, and which are not." 261 Wis. at page 515h.

[13] (1953), 265 Wis. 207, 213, 60 N. W. 2d 763. In this case the court held constitutional under the internal improvements clause of the Wisconsin Constitution, art. VIII, sec. 10, a statute providing for payments to towns from the general fund for the acquisition, preservation, and development of forests.

[14] (1965), 28 Wis. 2d 102, 106, 135 N. W. 2d 799. In this case, the court held unconstitutional a flat city tax on all residential and commercial property.

power must be based on presupposition of statewide concern."

This concern is expressed in the preamble to the act creating the countywide assessor system:

"SECTION 1. STATEMENT OF POLICY AND PURPOSES. The legislature finds that because of the importance of the local property tax to government finance it is necessary to improve and modernize the property tax assessment system. To carry out this intent it is necessary:

"(1) That the assessment of real and personal property for tax purposes should be uniform throughout the state of Wisconsin;

"(2) That all property should be assessed at full market value;

"(3) That the assessment process should be a local government function with supervision by the state;

"(4) That all property should be assessed by assessors chosen on the basis of training and ability;

"(5) That assessment districts should be large enough to support an adequate staff; and

"(6) That the use of data processing can materially assist in improving the assessment process." [15]

Thus, although the legislature recognizes that the assessment process itself should be a local government function, to achieve the objectives of statewide uniformity, assessment districts should be large enough to support an adequate and well-trained staff, and the whole process should be supervised by the state. Sec. 70.99, Stats., provides that the assessment district shall be the whole county. The statute provides that the county assessor shall be chosen from a list of candidates certified as qualified by the state department of revenue,[16] and that the assessment process shall be conducted under guidelines issued by the department of revenue.[17] Moreover, and significantly, sec. 70.99 imposes this requirement on the county assessor:

[15] Ch. 433, sec. 1, Laws of 1969.
[16] Sec. 70.99 (1), Stats.
[17] Sec. 70.99 (9), Stats.

"In making the first assessment of any city, town or village the county assessor shall equalize the assessment of property within each taxation district. . . ."

This objective of equality in taxation is a matter of particular statewide concern, since the state is under a profound constitutional obligation to assure its citizens equal protection of the laws generally, and specifically, uniformity in property taxation.[18]

We therefore conclude that the subject matter of sec. 70.99, Stats., is of statewide concern.

B. *Uniformity.*

In view of art. XI, sec. 3 of the Wisconsin Constitution, statutes affecting the right of cities and villages to determine their own affairs must affect all cities and villages uniformly. However, as this court held in *Van Gilder v. Madison*[19] and affirmed in *West Allis v. Milwaukee County*[20] this uniformity limitation only applies if the subject of the statute concerns primarily local affairs. If the subject of the legislation is of statewide concern, the uniformity restriction is inapplicable. Where the legislation is, in fact, nonuniform, however, the differences in treatment must be supported by rational justifications. As expressed in *West Allis:*

"[W]hen the legislature deals with matters that are primarily of statewide concern, it may deal with them free of any restriction contained in the home-rule amendment. The legislature can thus make effective a law touching on a matter of statewide concern in one city and not in another, provided that the classification is proper."[21]

---

[18] *See* fourteenth amendment to the United States Constitution; and art. I, sec. 1, and art. VIII, sec. 1 of the Wisconsin Constitution.

[19] (1936), 222 Wis. 58, 84, 267 N. W. 25, 268 N. W. 108.

[20] (1968), 39 Wis. 2d 356, 365, 366, 159 N. W. 2d 36, certiorari denied, 393 U. S. 1064, 89 Sup. Ct. 717, 21 L. Ed. 2d 707 (dicta).

[21] *Id.*

Since we have concluded that the subject of sec. 70.99, Stats., was primarily a matter of statewide concern, the uniformity requirement of the home-rule amendment is not applicable here. However, even assuming *arguendo* that the statute concerns primarily local affairs, thus making the uniformity requirement applicable, that requirement is not violated. Sec. 70.99 is, on its face, uniformly applicable throughout the state. The legislature did not enact a statute which could only apply to Kenosha county, or as is often the case, Milwaukee county. Each county in the state has an equal right to decide to adopt a countywide assessor system. The residents of all cities, villages, and towns have an equal right to participate in making that decision through their right to vote for and petition county board members. Where a statute confers equal legal powers, that would seem sufficient to satisfy the uniformity requirement. Thus, for example, two cities may have identical powers, yet the respective city councils may enact entirely different sets of ordinances. The state could hardly be held to have violated the uniformity requirement in such a situation. As the court pointed out in *Van Gilder:*

". . . In that sense there could hardly be a law affecting with uniformity every city. A law uniform in its application might work out one way in one city and in another way in another city depending upon the local situation and the way in which it was in fact administered and so 'affect' them differently." [22]

Thus, even if sec. 70.99, Stats., concerns local affairs, and must therefore affect cities and villages uniformly, we hold that this uniformity requirement is not violated.

Since the statute pertains primarily to statewide affairs, the uniformity requirement does not apply and the statute's validity depends upon the lesser standard that

[22] *Van Gilder v. Madison, supra,* footnote 19, 222 Wis. at page 67.

any classifications it makes must be reasonable. The statute makes no classifications. It applies with equal force throughout the state. It does not pertain to only one locale. Since it makes no classifications the reasonable classification requirement is irrelevant here.

Looking at the actual effect of sec. 70.99, Stats., however, the statute arguably does produce different classifications—the cities and villages in Kenosha county have no office of assessor, while the cities and villages in the rest of the state do. However, even viewing the problem in this manner, the statute is still constitutional because such a classification is supported by a reasonable justification.

It must be noted, first, that legislative classifications are presumed valid, and "where a tax measure is involved, the presumption of constitutionality is strongest." [23] Before a classification will be held improper, the challenger must "prove that the legislature has abused its discretion beyond a reasonable doubt." [24] The constitutional inquiry here consists of two parts: (1) Could the legislature have rationally concluded that a legitimate public purpose would be served by giving counties the option of adopting or not adopting the countywide assessor system? (2) Could the Kenosha county board of supervisors rationally have concluded that a legitimate public purpose would be served by adoption of the system in Kenosha county? The answer to both questions must be "Yes."

It is evident in the preamble to the act that the legislature considered achieving uniformity in property taxation and upgrading the quality of the assessment process important public goals. Nevertheless, whether the conditions in a particular locality warranted adoption of the

[23] *Simanco, Inc. v. Department of Revenue* (1973), 57 Wis. 2d 47, 54, 203 N. W. 2d 648.

[24] *State ex rel. La Follette v. Reuter* (1967), 36 Wis. 2d 96, 111, 153 N. W. 2d 49.

particular procedures contained in sec. 70.99, Stats., to achieve these goals, the legislature left to each county to decide. The county board of supervisors is probably more familiar with local needs and problems than are the members of the state legislature and it is thus not unreasonable that the board should make the decision. Additionally, since the county assessor system is a new development the legislature could have considered it prudent to make adoption of the system optional at first to see how well it would work in a small number of counties. Using such an optional system to test innovations in governmental organization cannot be judged unreasonable.

As to reasons for Kenosha county's decision to adopt the countywide assessor system, nothing appears in the record. However, the presumption of constitutionality attaching to ordinances (as well as statutes) means that in the absence of any evidence, the ordinance must be presumed to serve a legitimate public purpose and therefore be constitutional.[25]

3. *Does sec. 70.99, Stats., violate art. IV, sec. 23 of the Wisconsin Constitution by creating a nonuniform system of town government?*

Art. IV, sec. 23 of the Wisconsin Constitution provides, in part, as follows:

"The legislature shall establish but one system of town government, which shall be as nearly uniform as practicable . . . ."

Amicus curiae, the League of Suburban Municipalities, argues that sec. 70.99, Stats., violates this constitutional provision because towns in counties adopting the countywide assessor system have no office of town assessor,

[25] *State ex rel. Baer v. Milwaukee* (1967), 33 Wis. 2d 624, 630, 148 N. W. 2d 21.

while towns in nonadopting counties do have such an office.

This argument is basically the same as the argument that sec. 70.99, Stats., violated the uniformity clause of art. XI, sec. 3 of the Wisconsin Constitution. For the reasons expressed in our previous discussion, we conclude that the amicus curiae's argument is without merit, first, because sec. 70.99, on its face, applies equally throughout the state it does not offend the "one system" or "uniformity" requirements of art. IV, sec. 23; and second, even assuming *arguendo* that sec. 70.99 can be considered not to apply equally throughout the state, it still may be found constitutional because these requirements do not prohibit all variations in governmental functions. Prior to a recent amendment, sec. 23 of art. IV also applied identically to counties:

"The legislature shall establish but one system of town *and county* government, which shall be as nearly uniform as practicable . . . ." (Emphasis added.)

*West Allis v. Milwaukee County* [26] interpreted this provision as it then applied to counties, but the court's language is equally applicable to questions concerning town government:

"It appears then that the government of one county may vary from that of the others, provided the system remains untouched, and that in their details the governments vary only to the extent that it is impracticable for them to be uniform. The classifications must be reasonable."

Any "classifications" produced by sec. 70.99, Stats., are reasonable. The only new question presented here is whether abolishing the office of town assessor in those counties adopting a countywide assessor system amounts to creation of a different system of town government.

[26] *Supra*, footnote 20, 39 Wis. 2d at page 372.

Clearly it does not. The cases cited by amicus curiae involved statutes authorizing fundamental changes in local government, altering the composition or basic power of the county board.[27]  Sec. 70.99 contemplates no such changes and cannot be said to create a different "system" of town government.

*By the Court.*—Order affirmed.

---

[27] *State ex rel. Milwaukee County v. Boos* (1959), 8 Wis. 2d 215, 99 N. W. 2d 139 (creation of Milwaukee county executive with veto power over county board held illegal); *State ex rel. Adams v. Radcliffe* (1934), 216 Wis. 356, 257 N. W. 171 (statute allowing counties to adopt commission system of government and abolish board of supervisors held illegal).