Eric Roberson and Mark Strachota,
Plaintiffs-Appellants,

v.

Milwaukee County, Defendant-Respondent.†

Court of Appeals

*No. 2010AP857. Submitted on briefs October 8, 2010.
—Decided March 31, 2011.*

2011 WI App 50

(Also reported in 798 N.W.2d 256.)

† Petition for Review filed.

787

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jonathan Cermele* of *Cermele & Associates, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James R. Scott* of *Lindner & Marsack, S.C.*, Milwaukee.

Before Vergeront, P.J., Lundsten and Blanchard, JJ.

¶ 1. LUNDSTEN, J. Police officers Eric Roberson and Mark Strachota were promoted to the rank of captain in the Milwaukee County Sheriff's Department in 2001. After their promotions, the County imposed a general pay freeze that deprived Roberson and Strachota of step pay increases they would other-

wise have received. In 2006, the Sheriff promoted several other officers to the rank of captain. To avoid the effects of the pay freeze, the Sheriff slotted these newly promoted captains in at the top of the pay range for captains, three pay steps above Roberson and Strachota.

¶ 2. Roberson and Strachota filed suit, alleging that the County violated WIS. STAT. § 63.14(3), a civil service statute, when it paid them less than the subsequently promoted captains.[1] Both sides moved for summary judgment. Pertinent here, the County argued that its statutory "home rule" power under WIS. STAT. § 59.03(1) authorized it to pay the two groups of captains differently and that its home rule authority trumps the otherwise-applicable § 63.14(3). The circuit court granted summary judgment to the County and dismissed the suit. We conclude that the County was not entitled to summary judgment. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## *Background*

¶ 3. In 2001, Eric Roberson and Mark Strachota were promoted to the rank of captain in the Sheriff's Department. The County pays captains such as Roberson and Strachota pursuant to an Executive Compensation Plan, which was adopted as part of the County's civil service system. Under the plan, the County compensates employees according to their job titles and, within each job title, according to "steps" of increasing compensation. For captains, there are eight steps.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 4. At the time of Roberson's and Strachota's promotions, the practice was to start captains at pay step 5. Upon completion of a probationary period, captains were generally moved to the highest step, step 8. However, after Roberson and Strachota were promoted and placed at step 5, the County froze step pay increases. As a result, Roberson and Strachota remained at pay step 5 until their retirements in 2009 and 2007, respectively.

¶ 5. In 2006, the Sheriff promoted eight officers to the rank of captain. The newly promoted captains were immediately appointed at the step 8 pay level to ensure they would be paid more than some subordinates, such as sergeants.[2]

¶ 6. Roberson and Strachota (the plaintiffs) sued the County, alleging that the disparity between their pay and the newly promoted captains' pay violated WIS. STAT. § 63.14(3). The plaintiffs sought a declaratory judgment and, invoking WIS. STAT. §§ 109.01 and 109.11, sought back pay, statutory penalties, and pension contributions and adjustments.

¶ 7. Both the County and the plaintiffs moved for summary judgment. Based on its interpretation of the county "home rule" statute, WIS. STAT. § 59.03(1), the circuit court agreed with the County that WIS. STAT. § 63.14(3) did not apply to the County's actions. Accordingly, the court granted summary judgment in favor of the County. The plaintiffs appeal.

---

[2] The County assumes in its arguments before this court that all of the newly promoted captains were slotted in at pay step 8. The submissions indicate that this was verified with respect to at least six of the captains. For purposes of our discussion on appeal, we will speak as if all of the newly promoted captains were paid at the step 8 level.

### *Discussion*

¶ 8. The plaintiffs argue that summary judgment in favor of the County was improper. We review summary judgment decisions *de novo,* applying the same method as the circuit court. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). A party is entitled to summary judgment when there are no disputed issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 9. The circuit court granted summary judgment based on the court's conclusion that the County's home rule power under WIS. STAT. § 59.03(1) trumped the equal pay requirement in WIS. STAT. § 63.14(3) that would otherwise apply to the County. The plaintiffs contend that this legal conclusion is incorrect. We agree for the reasons set forth in section A, below.

¶ 10. In section B, we address the County's alternative argument that it complied with WIS. STAT. § 63.14(3). We explain that the County has not demonstrated that there are undisputed facts showing that it complied with § 63.14(3).

### *A. Whether The County's Home Rule Authority Trumps Its Obligations Under The Civil Service Statute, WIS. STAT. § 63.14(3)*

¶ 11. The home rule issue we address is a narrow one. The question is whether a particular civil service statute, WIS. STAT. § 63.14(3), falls within the meaning of a phrase used in the county home rule statute, WIS. STAT. § 59.03(1). The county home rule statute, titled

"Administrative home rule," states: "Every county may exercise any organizational or administrative power, subject only to the constitution and to any *enactment of the legislature which is of statewide concern and which uniformly affects every county.*" WIS. STAT. § 59.03(1) (emphasis added). The question is whether the county home rule statute trumps § 63.14(3) because the latter statute is not an enactment "which is of statewide concern and which uniformly affects every county."

¶ 12. WISCONSIN STAT. § 63.14(3) states, in pertinent part:

> *No county specified in s. 63.01* or any department, officer or employee thereof shall hire or employ a person, subject to civil service in such county, at a wage or salary less than that advertised by the civil service commission of such county for the position to be filled, *nor shall such county, department, officer or employee pay, or cause to be paid, salaries or wages of different amounts to persons in the same classification and stage of advancement,* unless such difference in salaries or wages shall be based on difference of work performed or the time of day or night of performance of work . . . .

(Emphasis added.) Section 63.14(3), by cross-reference to WIS. STAT. § 63.01, is applicable to all counties that have a civil service commission. Section 63.01(1) states, as pertinent here: "There shall be a civil service commission in every county containing 500,000 inhabitants or more according to the last state or United States census *and in all other counties the county board of supervisors may establish a civil service commission* . . . ." (Emphasis added.) Thus, Milwaukee County must, and all other counties may, establish a civil service commission.

¶ 13. The dispute boils down to the following. The plaintiffs argue that Wɪs. Sᴛᴀᴛ. § 63.14(3), by reference to Wɪs. Sᴛᴀᴛ. § 63.01(1), "uniformly affects every county" because every county either must or may have a civil service commission. The County, on the other hand, argues that "uniformly affects every county" means that a provision must *mandatorily* apply to every county. Thus, according to the County, because Milwaukee County is the only county that must have a civil service commission, the civil service statute does not "uniformly affect[] every county."

¶ 14. As the following explains, we conclude that the plaintiffs' reading of the statutes is correct because it is consistent with our supreme court's interpretation of similar constitutional language and we discern no reason why the two provisions should be interpreted differently.

¶ 15. In *Thompson v. Kenosha County*, 64 Wis. 2d 673, 221 N.W.2d 845 (1974), the court discussed and applied language then contained in article XI, section 3 of the Wisconsin Constitution and now contained in article XI, section 3(1). Article XI, section 3(1) states, in pertinent part: "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to *such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village*." Wɪs. Cᴏɴsᴛ. art. XI, § 3(1) (emphasis added).

¶ 16. It is not happenstance that the statewide concern and uniformity language in the county home rule statute tracks language in article XI, section 3(1). The county home rule statute is patterned after article XI, section 3(1). *See* Committee Comment, 1973, Wɪs. Sᴛᴀᴛ. Aɴɴ. § 59.025 (West Supp. 1977–78) (addressing a previous version of Wɪs. Sᴛᴀᴛ. § 59.03(1) containing similar uniformity language and stating that the provi-

sion was "patterned after the constitutional and statutory provisions granting home rule to cities and villages"); *see also State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶ 37, 269 Wis. 2d 549, 676 N.W.2d 401 (stating that county home rule authority in § 59.03 is "consistent with the general rule of limitation on the constitutionally-based home rule authority of other local units of government"). Thus, *Thompson*'s interpretation of the language is arguably controlling and, at a minimum, highly persuasive.

¶ 17. In *Thompson*, the plaintiff contested a state statute permitting counties to establish a county assessor system that overrides the assessment powers of cities, villages, and towns within such counties. *Thompson*, 64 Wis. 2d at 676. It was argued that this statute impinged on the constitutional home rule authority of cities and villages, found in article XI, section 3 of the Wisconsin Constitution. *Id.* at 682–83. Thus, similar to the question here, the question in *Thompson* was whether the county assessor statute was an " 'enactment[] of the legislature of state-wide concern as shall with uniformity affect every city or every village.' " *Id.* at 683 (quoting article XI, section 3, as then in force).

¶ 18. Particularly significant here, the county assessor statute did not require that all counties establish a county assessor system. Rather, the statute authorized "any county, upon a 3/5ths vote of the county board, to establish a county assessor system." *See id.* at 676, 686–88. Thus, the county assessor system provided for by the statute did not mandatorily apply statewide. Nonetheless, the *Thompson* court concluded that the statute met the uniformity requirement. *Id.* at 687. The court observed that "[e]ach county in the state has an equal right to decide to adopt a countywide assessor system" and concluded that, "[w]here a statute confers

equal legal powers, that would seem sufficient to satisfy the uniformity requirement." *Id.*

¶ 19. Accordingly, *Thompson*, albeit implicitly, rejected the same argument that the County makes here—that a home rule uniformity requirement means that a statute must be mandatory. Given the similarity in the language and the fact that the county home rule statute is patterned after the constitutional city and village home rule provision, we discern no reason to deviate here.[3]

¶ 20. We have examined each of the County's uniformity arguments and find none of them persuasive. For example, the County asserts that the civil service provisions in Wis. Stat. §§ 63.01 to 63.17 do not uniformly affect counties because the provisions, in the words of the County, "provide[] the broadest of frameworks for a system, leaving the individual structure to the individual counties," and that this shows that the legislature was not concerned with uniformity. However, the civil service provisions do more than provide a framework. More to the point, Wis. Stat. § 63.14(3) does more than provide a framework—it expressly prohibits certain practices.[4]

---

[3] We acknowledge that, in contrast to the assessor statute at issue in *Thompson v. Kenosha County*, 64 Wis. 2d 673, 221 N.W.2d 845 (1974), the civil service statutes at issue here include an exception to the equal-right-to-decide-to-adopt scenario. That is, counties at or above 500,000 inhabitants *must* have a civil service commission. This difference, however, does not affect the lesson taken from *Thompson*. The fact that one or more counties must opt in does not undercut the law's uniform effect. If anything, it enhances that effect by making the law partially mandatory.

[4] The County also argues that it is significant that state civil service under Wis. Stat. ch. 230 may permit more leeway than Wis. Stat. § 63.14(3). However, even if this were the case,

¶ 21. Also, the County seems to suggest that there is a "statewide concern" analysis that is distinct from a "uniformly affects every county" analysis. However, if the County means to make that argument, it is foreclosed by *Jackson County v. DNR*, 2006 WI 96, 293 Wis. 2d 497, 717 N.W.2d 713, which states, in reference to Wis. Stat. § 59.03(1): "When exercising home rule power, a county must be cognizant of the limitation imposed if the matter has been addressed in a statute that uniformly affects every county as such legislation shows the matter is of statewide concern." *Id.*, ¶ 19. This language teaches that, if a legislative enactment "uniformly affects every county," then it is a matter of "statewide concern." Thus, we do not address arguments made by the County that appear targeted solely at whether Wis. Stat. § 63.14(3) is a matter of statewide concern.

¶ 22. In sum, we follow *Thompson*'s lead and conclude that the most reasonable interpretation of Wis. Stat. § 59.03(1) is that its "statewide concern and . . . uniformly affects" requirement is met here because Wis. Stat. § 63.14(3) could apply to all counties by virtue of the opt-in language in Wis. Stat. § 63.01(1).[5]

¶ 23. We pause to identify two county home rule and civil service statute issues that we do not address, expressly or implicitly.

---

the County does not explain why it would matter. There is nothing inherently problematic about the legislature requiring different things for county civil service and state civil service.

[5] The County may also be separately arguing that its compensation of the captains "complement[s] rather than conflict[s] with the state legislation." *See State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶ 37, 269 Wis. 2d 549, 676 N.W.2d 401. If the County is raising this as a separate argument, it would plainly fail to the extent that the County is in violation of Wis. Stat. § 63.14(3)'s prohibitions, as such violations necessarily are in conflict with state legislation.

¶ 24. First, we do not weigh in on whether, in the absence of Wis. Stat. § 63.14(3), the County's home rule power would permit it to pay the two groups of captains differently. For purposes of summary judgment, the parties seemingly assume that the home rule statute would have provided a basis for the County's actions. We do not endorse that assumption.

¶ 25. Second, we do not explore whether other legal theories, briefed and not briefed, might lead to the conclusion that the civil service statute binds the County despite the county home rule statute. For example, we do not address whether this is a situation in which a more specific statute, the civil service statute, controls when there is a conflict with a more general statute, the county home rule statute.

¶ 26. What remains is the County's distinct argument that we should affirm summary judgment in its favor on the alternative ground that it complied with the equal pay requirement in Wis. Stat. § 63.14(3).

B. *Whether The County Is Entitled To Summary Judgment Because The Undisputed Facts Show That It Complied With Wis. Stat. § 63.14(3)*

¶ 27. The County argues that, if its home rule statute does not trump Wis. Stat. § 63.14(3), the County is entitled to summary judgment because the undisputed facts show that it complied with § 63.14(3). We disagree.

¶ 28. Wisconsin Stat. § 63.14(3) prohibits the County from paying "salaries or wages of different amounts to persons in the same classification and stage of advancement, unless such difference in salaries or wages shall be based on difference of work performed or

the time of day or night of performance of work." Thus, for the County to be entitled to summary judgment, there must be undisputed evidence showing that the difference in pay between the plaintiffs and the newly promoted captains was warranted by a difference in:

1) "classification,"

2) "stage of advancement,"

3) "work performed," or

4) "the time of day or night" work is performed.

We address these four grounds and then address additional arguments made by the County.

### 1. Classification

¶ 29. As to "classification," the materials submitted to the circuit court include a stipulation by the plaintiffs and the County that the plaintiffs and the newly promoted captains had a "rank/classification" of "Captain." The County suggests no reason why this stipulation does not constitute an admission that all of the captains were in the same "classification."

¶ 30. The County might mean to argue that the very fact that the County placed the two groups of captains into different pay steps is reason to question whether the two groups are in the same classification. If this is what the County means to argue, it is an undeveloped argument. Moreover, the reasoning underlying this suggestion is flawed because it is circular: the County may pay the two groups different salaries because they are differently classified and they are differently classified because the County pays them different salaries.

## 2. Stage Of Advancement

¶ 31. As to "stage of advancement," the County contends that it need only pay persons in the same "stage of advancement" equally. Thus, the County argues, because it paid the two longer-serving plaintiffs the same lower salary and it paid all of the newly promoted captains the same higher salary, it complied with this part of the equal pay statute. This interpretation is patently absurd because it would permit paying persons at a higher "stage of advancement" less than persons at a lower "stage of advancement."

¶ 32. What remains is the County's assertion that the term "stage of advancement" is ambiguous. The County makes this assertion in a roundabout way—it rhetorically asks whether "stage of advancement" equates to "seniority with the County or seniority within the Grade, or does it mean something else altogether?" However, the County then fails to present a developed statutory interpretation argument that resolves the asserted ambiguity. Thus, this is an undeveloped argument, and we address it no further.

## 3. Work Performed

¶ 33. The County does not point to evidence suggesting that the plaintiffs performed different work than the newly promoted captains. Instead, the County merely asserts that there is a dispute as to whether the plaintiffs and the newly promoted captains performed the same "duties." This argument, however, is self-defeating. If there is such a factual dispute, it prevents summary judgment in favor of the County, at least to the extent that the County contends the difference in salary was justified because of a difference in "work performed." Moreover, the County does not attempt to

reconcile its assertion with its stipulation that "[t]he difference in pay . . . was not based upon the difference in work performed."

### 4. The Time Of Day Or Night Work Is Performed

¶ 34. The County points to no evidence suggesting that a difference in pay was justified by a difference in the time of day or night the plaintiffs worked. To the contrary, the stipulation states that the "difference in pay between [the captains] . . . was not based upon [a] difference in . . . the time of day/night [work was performed]."

### 5. Additional County Arguments

¶ 35. The County suggests that there may be tension between WIS. STAT. § 63.14(3) and another civil service statute, WIS. STAT. § 63.11. The County argues that § 63.11 "introduces different standards than those utilized in § 63.14(3) including the 'efficiency' of the employee." This argument goes nowhere because the County does not claim that it paid the newly promoted captains more based on their efficiency or based on any other "different" standards found in § 63.11.[6]

---

[6] WISCONSIN STAT. § 63.11 requires the director of personnel, under the direction of the civil service commission, to devise a wage scale to be recommended to the board. Section 63.11 states that "[t]he wage scale shall be graduated according to the duties performed, the length of service and efficiency records of the officers or employees, and the time of day or night those services are performed by the establishment of shifts." Elsewhere, WIS. STAT. ch. 63 describes "efficiency records" as "based, among other things, upon the quantity and quality of the work performed and the regularity and punctuality of attendance." WIS. STAT. § 63.09.

800

¶ 36. The County contends that WIS. STAT. § 59.22(2)(c) provides authority for it to pay the two groups of captains differently. The County points out that § 59.22(2)(c) authorizes county boards to "fix or change the salary or compensation of any . . . employee . . . without regard to the tenure." However, this argument lacks merit because § 59.22(2)(c)'s grant of power is expressly subject to civil service laws. *See* § 59.22(2)(c)2. (stating that "[n]o action of the board may be contrary to or in derogation of . . . ss. 63.01 to 63.17"). Thus, in civil service counties, such as Milwaukee County, the grant of authority in § 59.22(2)(c) is limited by WIS. STAT. § 63.14(3).

¶ 37. The County's remaining arguments are easily rejected because they are based on hypotheticals that do not match the facts of this case. For example, the County asserts that WIS. STAT. § 63.14(3) should be read to allow it to pay a "hard-charging" captain more than a "slug-like" captain. This assertion is a nonstarter because there is no evidence that the newly promoted captains were paid more because they were more "hard-charging." Indeed, so far as the record discloses, the *only* reason the two groups of captains were paid differently is because of the county pay freeze and the fact that the Sheriff subsequently sought to avoid the freeze by slotting the new captains in at a higher pay level. Thus, we address no further this and similar concerns raised by the County relating to the County's ability to compensate employees differently based on performance.

¶ 38. Accordingly, for the reasons discussed, we conclude that the County fails to show that the undisputed facts demonstrate that it complied with WIS. STAT. § 63.14(3).

## Conclusion

¶ 39. The circuit court granted summary judgment in favor of the County based on a premise that we have rejected—that the County's home rule authority under Wis. Stat. § 59.03(1) trumps the equal pay requirement in Wis. Stat. § 63.14(3). Thus, in accordance with the plaintiffs' request for relief, we reverse summary judgment in favor of the County and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.