ANN WALSH BRADLEY, J.
¶ 74. (concurring and dissenting). I agree with the majority that the Police Association is not entitled to relief or damages. Majority op., ¶ 8. Likewise, I agree that the purpose of the Home Rule Amendment is to grant power and self-governance to cities and villages, providing them with greater autonomy over local affairs. Majority op., ¶ 2.
¶ 75. I write separately, however, because the majority turns that purpose on its head. Instead of freeing municipalities from interference by the legislature when dealing with local affairs, the majority limits the power and restrains the ability of municipalities to self-govern.
¶ 76. In reaching its conclusion that Wis. Stat. § 66.0502 precludes the city of Milwaukee from enforcing its residency requirement, the majority grants *335 extensive power to the legislature to interfere with matters that relate exclusively to the local affairs of Wisconsin's cities and villages. It does this by contravening the well-recognized purpose of the Home Rule Amendment, ignoring the evidentiary record, and creating a heretofore unknown facial uniformity rule.
¶ 77. Contrary to the majority, I conclude that the city of Milwaukee may enforce its residency requirement under the powers granted to local municipalities by the Wisconsin Constitution's Home Rule Amendment. I would therefore affirm the court of appeals' determination that Wis. Const, art. XI, § 3(1) precludes application of Wis. Stat. § 66.0502 to Milwaukee's Charter Ordinance 5-02. Accordingly, I respectfully dissent.
I.
¶ 78. At issue here is whether the Wisconsin Constitution's Home Rule Amendment grants Milwaukee, through its charter ordinance, the power to enforce its local residency requirement despite the legislative enactment of Wis. Stat. § 66.0502.
¶ 79. Municipalities may exercise constitutional home rule authority by charter ordinance.[1] Wis. Stat. § 66.0101. The home rule constitutional amendment, Wis. Const, art. XI § 3(1), provides that " [c]ities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."
*336 ¶ 80. For over 75 years, pursuant to a charter ordinance, Milwaukee has required its employees to live within the city where they work.[2] Under its constitutional home rule authority, Section 5-02(1) of Milwaukee's City Charter requires all employees "to establish and maintain their actual bona fide residence within the boundaries of the city." Milwaukee asserts that its Charter Ordinance 5-02 has a number of local economic and societal benefits, such as protecting its tax base, housing values and local commerce, as well as improved safety through community policing and rapid response times in emergencies.
¶ 81. However, in 2013 the Wisconsin legislature enacted Wis. Stat. § 66.0502, which abolished all local residency requirements in the State of Wisconsin. The new statute provides that "no local government unit may require, as a condition of employment, that any employee or prospective employee reside within any jurisdictional unit." Wis. Stat. § 66.0502(3)(a).
¶ 82. The legislative history of Wis. Stat. § 66.0502 demonstrates that the statute's aim was to eliminate Milwaukee's residency requirement. As the court of appeals explained, " [t]he facts in the record, exemplified by the Legislative Fiscal Bureau paper, make clear that the goal of Wis. Stat. § 66.0502 was to target the City of Milwaukee." Black v. City of Milwaukee, 2015 WI App 60, ¶ 21, 364 Wis. 2d 626, 869 N.W.2d 522.
¶ 83. Wisconsin municipalities have two distinct sources of home rule authority — constitutional and statutory. Constitutional home rule is expansive and statutory home rule is limited. Contrary to "the direct and expansive delegation of power to municipalities *337 under Wis. Const, art. XI, section 3," statutory home rule authority is limited. State ex rel. Teunas v. Kenosha County, 142 Wis. 2d 498, 504, 418 N.W.2d 833 (1988).
¶ 84. Only cities and villages are granted constitutional home rule authority. Other units of local government, such as counties, towns and school districts, have administrative home rule authority pursuant to statute. See, e.g., Wis. Stat. § 59.03.[3] A county's statutory home rule authority is limited. Teunas, 142 Wis. 2d at 504 ("a county board has only such powers as are expressly conferred upon it or necessarily implied from the powers expressly given or from the nature of the grant of power.").
¶ 85. Milwaukee's residency requirement was enacted under "the direct and expansive delegation of power to municipalities under Wis. Const, art. XI, section 3." See id. However, in reaching its conclusion that Wis. Stat. § 66.0502 precludes the city of Milwaukee from enforcing its residency requirement, the majority restricts the constitutional mandate and instead grants expansive power to the legislature to govern matters that relate exclusively to the local affairs of Wisconsin's cities and villages.
HH HH
¶ 86. The majority purports to follow the two-step analysis of the Home Rule Amendment set forth in Madison Teachers, Inc. v. Walker, 2014 WI 99, *338 ¶ 101, 358 Wis. 2d 1, 851 N.W.2d 337. In applying the first step, it explains that this court has outlined "three areas of legislative enactment: those that are (1) exclusively a statewide concern; (2) exclusively a local concern; or (3) a 'mixed bag.' " Majority op., ¶ 29 (citing Madison Teachers, 358 Wis. 2d 1, ¶ 96).
¶ 87. Although the majority summarizes the parties' positions and identifies their interests, it reaches its initial conclusion without any analysis whatsoever of the law or the facts of record. Initially, the majority concludes that Wis. Stat. § 66.0502 is a "mixed bag." It acknowledges that this court should then apply the test of paramountcy to determine whether the legislative enactment is "primarily" or "paramountly" a matter of local affairs or a matter of statewide concern." Majority op., ¶ 32.
¶ 88. Remarkably, the majority declines to apply the test of paramountcy and again, without any analysis whatsoever, ultimately arrives at a contrary conclusion. It " assume[s], without deciding, that Wis. Stat. § 66.0502 is a matter of local affairs." Majority op., ¶ 32.
¶ 89. In applying the second step of the analysis, the majority contends that " [f]or purposes of the home rule amendment, an enactment is uniform when it is facially uniform." Majority op., ¶ 7. Without any consideration of how the legislative enactment "with uniformity shall affect," the majority summarily concludes that Wis. Stat. § 66.0502 is facially uniform because the text says that it applies to "any city, village, town, county or school district." Id. Accordingly, the majority concludes that "Milwaukee may no longer enforce its residence requirement." Id.
*339 HH I — I HH
¶ 90. The majority's conclusion contravenes the well-recognized purpose of the Home Rule Amendment, which is to grant power and self-government to municipalities, rather than the legislature.
¶ 91. Adopted in 1924, "the home rule amendment was intended to provide cities and villages with greater autonomy over local affairs." Madison Teachers, 358 Wis. 2d 1, ¶ 89; see also State ex rel. Sleeman v. Baxter, 195 Wis. 437, 445, 219 N.W. 858 (1928) ("The recognized purpose of this amendment was to confer upon cities and villages a measure of self-government not theretofore possessed. It is a grant of power to cities and villages.").[4]
¶ 92. Significantly, this grant of local power was intended to free municipalities from legislative interference. Sleeman, 195 Wis. at 447. This court explained that " [i]n ascertaining the meaning of the home-rule amendment we should also take into account the fact that the legislature was not hostile to a larger measure of local self-government by cities." Van Gilder v. City of Madison, 222 Wis. 58, 71, 267 N.W. 25 (1936).
*340 ¶ 93. In order to effect the purpose of the Home Rule Amendment, the "constitutional expression of the will of the people is to be liberally construed." State ex rel. Michalek v. LeGrand, 77 Wis. 2d 520, 526, 253 N.W.2d 505 (1977). The majority pays only lip-service to the purpose of the Home Rule Amendment. It then focuses exclusively on the power of the legislature, rather than the expansive powers granted to municipalities under the Home Rule Amendment. Majority op., ¶ 24. As set forth below, the majority's analysis of the Home Rule Amendment threatens to give license to the legislature to invade any city it chooses with legislation targeted at matters of purely local concern.
IV.
¶ 94. Not only does the majority contravene the well-recognized purpose of the Home Rule Amendment, it ignores the facts of record regarding statewide and local interest. Without consideration of the evidence in the record, the majority " assume[s], without deciding, that Wis. Stat. § 66.0502 is a matter of local affairs." Majority op., ¶ 32.
¶ 95. In its discussion of the purported statewide interest behind Wis. Stat. § 66.0502, the majority gives great deference to the statute's legislative policy statement without acknowledging the complete dearth of evidence in support of a statewide interest. The primary statewide interest identified by the majority is the fact that the "Legislature specially included a public policy statement in Wis. Stat. § 66.0502." Majority op., ¶ 30. This statutory policy simply states: "The legislature finds that public employee residency requirements are a matter of statewide concern." Wis. Stat. § 66.0502(1).
*341 ¶ 96. Rather than address the fact that there is no evidence in the record supporting a statewide interest, the majority repeatedly asserts that legislative enactments are "entitled to great weight." Majority op., ¶ 30. According to the majority, "it is the province of the legislature, not the court, to determine public policy because as the voice of the people it is the best judge of what is necessary to meet the needs of the public." Majority op., ¶ 30 (citing Flynn v. Dep't of Admin, 216 Wis. 2d 521, ¶ 24, 576 N.W.2d 245 (1988) (internal quotations omitted).
¶ 97. Although the legislative declaration is due great weight deference, it is certainly not dispositive. Van Gilder, 222 Wis. at 73. As the Van Gilder court explained, this court is required to make the ultimate determination when there is a controversy between municipalities and the state regarding whether a matter is of local or state-wide concern:
The home-rule amendment does not lodge the power to determine what is a 'local affair' or what is a 'matter of state — wide concern' either with the municipality or with the legislature or attempt to define those terms. In the event of a controversy between municipalities and the state therefore the court is required to make the ultimate determination.

Id.

¶ 98. It is the unique role of the courts to determine the constitutionality of statutory provisions. Marbury v. Madison, 5 U.S. 137, 177 (1803). No legislative declaration can usurp this power or release us of this duty. Consequently, as the court of appeals explained, "the argument that residency requirements are a matter of statewide concern simply because the legislature said so is not persuasive because it is unsubstantiated." Black, 364 Wis. 2d 626, ¶ 21.
*342 ¶ 99. In determining whether legislation addresses a statewide interest, it is necessary to examine whether the statutory policy expressed in Wis. Stat. § 66.0502(1) is supported by the evidence in the record. As the court of appeals repeatedly observed, there is scant evidence in the record supporting a legitimate statewide interest:
The effect on the state ... is never substantiated, and only given lip-service with broad policy arguments. This complete dearth of evidence to support the legislature's contention does not suffice under the law.
The problem with the Police Association's argument, however, is that no evidence in the record allows us to conclude that § 66.0502 was drafted with the public's health, safety or welfare in mind.... Instead, the sole reason we can delineate for the statute's existence is the gutting of Milwaukee's long-standing residency requirement.
More importantly, there is no evidence in this record supporting this assertion [that Wis. Stat. § 66.0502 protects employees against 'unfairly restrictive' conditions].
Id., ¶¶ 21, 22, 24.
¶ 100. Not only does the majority ignore the dearth of evidence supporting a statewide interest, it fails to address the overwhelming evidence in support of the city of Milwaukee's local interest in enforcing its residency requirements. The majority's "assume without deciding" approach allows it to avoid discussion of the dire consequences this legislation will inflict on the city of Milwaukee.
*343 ¶ 101. Detroit's experience after similar residency requirements were abolished in Michigan foreshadows the impending consequences of the majority's decision in this case. As the unanimous court of appeals explained, "abolishing residency requirements could result in Milwaukee's suffering the same economic decline recently experienced by the city of Detroit." Id,., ¶ 7. After Detroit's residency requirement was eliminated, fifty-three percent of the police force moved outside the city, contributing to a population decline that had significant economic consequences.[5]
¶ 102. In this case, the Legislative Fiscal Bureau prepared a report detailing the expected impact of Wis. Stat. § 66.0502 on the city of Milwaukee, which employs over 7000 people, with approximately half of those employed as police officers or firefighters. Milwaukee Mayor Tom Barret's affidavit attests that $366.8 million of Milwaukee's budget is spent on city employees' salaries and wages. Mayor Barret's affidavit further explains that nearly half of Milwaukee's total operating costs go towards salaries for police officers and firefighters.
¶ 103. The projected outflow of Milwaukee's city employees will cause a reduction in the tax base of $622 million in residential land values and $27 million in retail property values. As Judge Kessler explained in her concurrence to the court of appeals decision, " [a] loss of $649 million from the Milwaukee tax base will obviously directly impact Milwaukee's ability to pay for necessary infrastructure, services and wages. There is no evidence in the record that any other *344 municipality would likely be similarly affected." Id., ¶ 42 (Kessler, J. concurring).
¶ 104. Wis. Stat. § 66.0502 also interferes with Milwaukee's ability to promptly respond to emergencies. Allowing city employees to live outside the city may result in slower service times during emergencies.[6] Milwaukee police are expected to be responsible for any police matter that comes to their attention at any time. See Milwaukee Police Department Rule 4 § 025.00 (Rev. July 2008). A police officer's ability to respond to local emergencies at any time is reduced when the officer no longer lives in the community in which he or she works.
¶ 105. Additionally, the city of Milwaukee Police Chiefs affidavit explains that having police officers live in the city is "critical to the police force's legitimacy and perceived integrity." Black, 364 Wis. 2d 626, ¶ 29. According to Police Chief Flynn, community policing increases the effectiveness of the police force and the safety of the city:
We have an ongoing struggle, as every urban police department does, to maintain our credibility in the community we police. The residency requirement helps to prevent the perception . . . that officers are outsiders, without any empathy for those they are policing, because [they] invade residents' neighborhoods and later return to distant retreats . . .
*345 Police officers who live in the community they police have an increased motivation to maintain a safe environment for themselves, their families, their co-officers, and the community as a whole.
Id. Commenters agree with this view, explaining that cities with residency requirements have experienced the benefit of improved neighborhoods and lower crime. See, e.g., Joe Mulligan, Not in Your Backyard: Ohio's Prohibition on Residency Requirements for Police Officers, Firefighters, and Other Municipal Employees, 37 U. Dayton L. Rev. 351, 369 (2012).
¶ 106. Given the overwhelming evidence of the effect that Wis. Stat. § 66.0502 will have on the city of Milwaukee, I conclude that the elimination of residency requirements addresses a matter primarily of local concern.
V.
¶ 107. The majority further avoids the damaging facts in the record by creating a heretofore unknown facial uniformity rule that essentially repeals the Home Rule Amendment. As the Madison Teachers' court explained, "home rule challenges are, by necessity, fact-specific inquiries. . . ." 358 Wis. 2d 1, ¶ 113.
¶ 108. Avoiding discussion of the facts of this case, the majority contends that" [f]or the purposes of the home rule amendment, an enactment is uniform when it is facially uniform." Majority op., f 7. After making this pronouncement, the majority summarily concludes that because the text of Wis. Stat. § 66.0502 applies to "any city, village, town, county, or school district," it is facially uniform. Id.
*346 f 109. This ipse dixit approach of the majority threatens the independence of the court.[7] It appears to surrender to the legislature our constitutional role of reviewing legislative enactments. Instead of engaging in a constitutional analysis of whether the statute affects with uniformity, in essence it concludes "well. . . the text says it does."
f 110. Relying on Thompson v. Kenosha County, 64 Wis. 2d 673, 676, 221 N.W.2d 845 (1974), the majority asserts that "facial uniformity is sufficient to satisfy the home rule amendment's uniformity requirement." Majority op., ¶ 36. However, Thompson is distinguishable because it examined legislation that gave, rather than eliminated, municipalities' power to govern their local affairs. 64 Wis. 2d at 687.
¶ 111. As the Thompson court explained, conferring equal power satisfies the uniformity requirement because municipalities retain the right to enact the ordinances they choose:
Each county in the state has an equal right to decide to adopt a countywide assessor system. The residents of all cites, villages, and towns have an equal right to participate in making that decision through their right to vote for and petition county board members. Where a statute confers equal legal powers, that would seem sufficient to satisfy the uniformity requirement. Thus, for example, two cities may have identical powers, yet the respective city councils may enact entirely different sets of ordinances.
Id. Thompson thus concluded that "[t]he state could hardly be held to have violated the uniformity requirement in such a situation." Id.
*347 ¶ 112. Granting municipalities power is distinguishable from the elimination of Milwaukee's residency requirement under Wis. Stat § 66.0502. When the legislature grants every municipality power over an area of governance, each municipality is uniformly affected because it retains the discretionary authority to act under that power.
f 113. In contrast, the elimination of residency requirements restricts, rather than expands a grant of local power. Here, municipalities without an employee residency requirement will be unaffected by Wis. Stat. § 66.0502, but it will have an outsize effect on the city of Milwaukee which did have a residency requirement.
¶ 114. Admittedly, Van Gilder presents a more challenging precedent. It sends mixed messages and ultimately lands on a constitutional interpretation that is at odds with the text of the constitutional Home Rule Amendment.
¶ 115. Initially Van Gilder signals an interpretation that honors the language of the constitutional amendment. "The power[] of municipalities ... to enact an organic law dealing with local affairs and government is subject to such acts of the legislature relating thereto as are of state-wide concern and affect with uniformity all cities." Van Gilder, 222 Wis. at 73.
¶ 116. Later, however, Van Gilder lands on an interpretation that is at odds with the text of the Home Rule Amendment: "when the legislature deals with local affairs as distinguished from matters which are primarily of state-wide concern, it can only do so effectually by an act which affects with uniformity every city." Id. at 80-81.
¶ 117. The latter misguided interpretation of the constitutional Home Rule Amendment has been ad *348 opted by subsequent courts, including recently by this court in Madison Teachers and by the majority today.
¶ 118. In Madison Teachers, this court interpreted the Home Rule Amendment to mean that legislative enactments will trump local laws if they either address a statewide matter or uniformly affect every municipality. 358 Wis. 2d 1, ¶ 101. If the matter is primarily a local concern, Madison Teachers instructs that the court must determine whether the statute uniformly affects every municipality. Id. If the statute satisfies the uniformity requirement, it does not violate the Home Rule Amendment. Id. I dissented in Madison Teachers.
¶ 119. Contrary to the majority's interpretation, I agree with the amicus briefs of the League of Wisconsin Municipalities and the Wisconsin Institute for Law and Liberty, as well as the brief of the city of Milwaukee and the unanimous court of appeals' observation that "the test articulated in Madison Teachers is somewhat at odds with the plain language of the home rule amendment." Black, 364 Wis. 2d 626, ¶ 15.
¶ 120. The majority here continues this error. I interpret the home rule constitutional amendment to mean what it says: the legislature can enact a law superseding a municipality's charter ordinance if the law is of "state wide concern as with uniformity shall affect every city or every village."[8]
¶ 121. A legislative act must be of statewide concern and then it must apply uniformly. The majority's interpretation provides otherwise. It states that a legislative act can supersede a city's charter ordinance *349 dealing with solely local matters, with no statewide concern whatsoever, as long as it does so uniformly. Thus, the majority simply ignores the requisite "statewide concern" language of the Home Rule Amendment.
¶ 122. Additionally, the majority also ignores the lack of uniform effect. Although Wis. Stat. § 66.0502 does not name any particular municipality, it will have an outsizes effect on the city of Milwaukee for the reasons set forth above, including a projected loss of $649 million from Milwaukee's tax base.
¶ 123. The effect on other Wisconsin municipalities is simply not addressed by the majority opinion. As the court of appeals aptly states, "the notion that a statute purporting to gut the tax bases and compromise the neighborhood integrity of all municipalities would pass both houses of the legislature defies logic." Id., ¶ 33. The majority's newly created facial uniformity rule eliminates the requirement that courts review the factual particulars of a home rule challenge.
¶ 124. Under the majority opinion, the only legislation that would not uniformly affect all municipalities is one that would overtly single out a particular city or village. The legislature is now free to search for laws unique to Milwaukee, Madison, Green Bay, or any other municipality of its choosing and enact facially neutral legislation abrogating individual local laws.
f 125. Ultimately, the majority opinion disregards the fundamental rule that "we interpret the home rule amendment with an eye toward preserving the constitution." Id., f 32 (citing State ex rel. Ekern v. City of Milwaukee, 190 Wis. 633, 639, 209 N.W. 860 (1926)). As the court of appeals warned, a facial uniformity standard "all but obliterate[s] the home rule amendment, which is not only illogical but also contrary to law." Id.
*350 f 126. In sum, I conclude that the city of Milwaukee may enforce its residency requirement under the powers granted to local municipalities by the Wisconsin Constitution's Home Rule Amendment. I would therefore affirm the court of appeals determination that Wis. Const, art. XI, § 3(1) precludes application of Wis. Stat. § 66.0502 to Milwaukee Ordinance 5-02. Accordingly, I respectfully dissent.
¶ 127. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON, J. joins this concurrence/dissent.

 Wis. Stat. 66.0101 includes a detailed, time-consuming procedure for municipalities to enact a charter ordinance that overrides a state law as it relates to the local affairs and government of the city or village.

 See Milwaukee Charter 5-02.

 Wis. Stat. § 59.03(1) provides that " [e]very county may exercise any organizational or administrative power, subject only to the constitution and to any enactment of the legislature which is of statewide concern and which uniformly affects every county."

 State ex rel. Sleeman v. Baxter, 195 Wis. 437, 445, 219 N.W. 858 (1928), sets forth the parameters of this grant of power to cities and villages as follows:
There is no express limitation upon the power of the legislature. Such limitations as may be found therein are limitations upon the exercise of the power granted and not limitations upon the power of the legislature. Power is granted to cities and villages 'to determine their local affairs and government subject only to this constitution and to such enactments of the legislature of statewide concerns as shall with uniformity affect every city or every village.' The phrase 'subject only to this constitution,' etc., is a phrase of limitation, but it is a limitation upon the power granted to cities and villages.

 Local Government Employee Residency Requirements, Legislative Fiscal Bureau, Joint Committee on Finance, Paper #554 at 6 (May 9, 2013).

 The court of appeals aptly noted that "the fifteen-mile rule set by § 66.0502(4)(b,c), which allows local governments to impose requirements that employees live within fifteen miles of the city or county that employs them, implicitly recognizes that citizens are safer and better served when emergency responders live nearby." Black v. City of Milwaukee, 2015 WI App 60, ¶ 28, 364 Wis. 2d 626, 869 N.W.2d 522.

 See, e.g., Marmolejo-Campos v. Holder, 558 F.3d 903, 930 (9th Cir. 2009) ("This purported explanation is a non-explanation — an ipse dixit or 'because I said so' edict.").

 Because the textual analysis of the Home Rule Amendment is set forth in f 4 of Justice Rebecca Bradley's concurrence, I need not repeat that analysis here.